UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

        v.

SHANE GUAY,
              Defendant.
_____

**19-CR-103-JLS-HKS**

**NOTICE OF OMNIBUS MOTION**

**MOTION BY:**

Jeffrey T. Bagley, Assistant Federal
Public Defender, Attorney for Shane Guay.

**DATE, TIME & PLACE:**

Before the Honorable H. Kenneth
Schroeder, Jr.  United States Magistrate
Judge, Robert H. Jackson United States
Courthouse, 2  Niagara Square, Buffalo,
New York 14202.

**SUPPORTING PAPERS:**

Affirmation of Assistant Federal Public
Defender Jeffrey T. Bagley, dated
January 24, 2020.

**RELIEF REQUESTED:**

Various forms of relief.

**DATED:**

January 24, 2020, Buffalo, New York.

Respectfully submitted,

**/s/Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341; 551-3346 (fax)
jeffrey_bagley@fd.org
*Attorney for Defendant Shane Gu*ay

**TO:**    Meghan A. Tokash
        Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              v.

SHANE GUAY,

              Defendant.
_____

**19-CR-103-JLS-HKS**

**AFFIRMATION IN SUPPORT
OF OMNIBUS MOTION**

     **JEFFREY T. BAGLEY, ESQ.,** affirms under penalty of perjury:

     I represent Shane Guay.  This affirmation is made in support of his motions as set forth in the following schedules.

**SCHEDULE I**

**SUPPRESSION**

**A.**    **The search warrant is stale and the fruits derived therefrom must be suppressed.**

On May 31, 2018, Olean Town Justice Daniel Palumbo issued a search warrant for Shane Guay and the premises at 147 North 8th Street, Olean New York in Cattaraugus County after an application by Daniel Walsh, a New York State police officer. This search warrant was based on alleged conduct from three days – November 6, 7, and 8 – in 2016.

In other words, the search warrant was issued based on conduct that occurred a full year and a half after the alleged conduct occurred. This 570-day delay renders the information in the warrant stale.

Mr. Guay moves under Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure for an Order suppressing the physical and oral evidence obtained from him as a result of the June 6, 2019 search warrant. Evidence was seized and a result of the search (as set forth with more specificity in Mr. Guay's attached affidavit, Ex. A) and that evidence must be suppressed. Mr. Guay was also interrogated after the search and those statements must be suppressed as fruits of the illegal search. *See, e.g., Wong Sun v. United States,* 371 U.S. 471 (1963) (suppressing defendant's statements due to antecedent Fourth Amendment violation); *United States v. Carter*, 884 F.2d 368 (8th Cir. 1989) (suppressing voluntary confession that was a result of an illegal search, despite issuance of *Miranda* warnings).

The defendant has standing to bring the instant motion.  He was a lawful occupant of the residence with free access to come and go as he pleased. The residence was his home and the things seized were his.  Accordingly, he had a reasonable expectation of privacy that society is prepared to recognize as reasonable. (*See* **Ex. A**.)

In the portion of the search warrant application entitled "Allegations of Fact to Support Reasonable Cause," the application alleges that "between November 7 and November 8, 2016" someone with the Instagram username "helloimbored100" messaged an Instagram user (name redacted in the version of the application provided to the defense), who is identified in the application as a juvenile. (*See* Application at pp. 6 to 15, attached as **Ex. B**). The helloimbored100 user asked for nude pics and sent an image of a nude adult male and an image of an adult female with her legs spread apart.

The application also alleges that the redacted Instagram user received a handful of messages on November 6 and 7, 2016 asking for nude pictures. (Application, at 4(b)). The application, however, does not specify who sent those requests.

Later in the application, Officer Walsh also alleges that on November 8, 2016, helloimbored100, presenting to be a 12-year-old girl, sent images of either underage girls or a penis at 13:53, 13:58, and 13:59 UTC. It is alleged that helloimbored100 also sent an image of vagina at 20:36 UTC, but that the age of the female cannot be determined. It is alleged that the context of the conversation suggests that it is supposed to that of the 12-year-old helloimbored100.

Also on November 8, 2017, at 16:54 UTC, helloimbored100 sent an image of a penis to a redacted Instagram user. At 17:40, helloimbored100 asks for "sexy" pictures of this Instagram user. At 22:42 helloimbored100 again asked for a nude picture. Helloimbored100 also sent a picture of his upper body, which Officer Walsh suggests matches a description of Shane Guay.

The remainder of this section of the application – the section meant to establish probable cause – goes on to demonstrate the alleged link between helloimbored100 and Shane Guay. There are no more facts provided as to either helloimbored100's activity or Shane Guay's

activity over the course of the next 570 days between this isolated conduct in the fall of 2016 and

the time at which the search warrant application is presented to Justice Palumbo at the very end

of May 2018.

Accordingly, the information in the warrant was extremely stale and probable cause did

not exist in May of 2018 to search Shane Guay or the premises at 147 North 8th Street.

Probable cause to search a place exists if the issuing judge finds a "fair probability that

contraband or evidence of a crime will be found in a particular place." *United States v. Ponce*,

947 F.2d 646, 650 (2d Cir.1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

 A search warrant is invalid if it is based on information that appears to be stale. The Second

Circuit has explained that:

> [T]he principal factors in assessing whether or not the supporting
> facts have become stale are the age of those facts and the nature of
> the conduct alleged to have violated the law. Where the supporting
> affidavits present a picture of continuing conduct or an ongoing
> activity, as contrasted with isolated instances of illegal acts, the
> passage of time between the last described act and the presentation
> of the application becomes less significant.

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v.*

*Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

The facts must be sufficiently close in time to the issuance of the warrant and the search

so that probable cause can be said to exist at the time of the search – not as of sometime in the

past.  *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (holding that six week delay

between drug purchase and search warrant affidavit was stale). The *Wagner* court went on to

explain that "facts of past criminal activity that by themselves are too stale can be sufficient if

the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe

that the cited activity was probably not a one-time occurrence."  *Id.*, at 75.

The information presented to Justice Palumbo was clearly stale and not of a sufficiently recent vintage to allow for a finding of probable cause.  Continued downloading or evidence of exchange of child pornography was not explored.  There was no evidence of chatting with others on this topic or entering other child pornography sites or other indicia of continued criminal activity.  *See United States v. Greathouse*, 297 F.Supp.2d 1264 (D. Ore. 2003) (finding that a tip that the suspect's computer one year earlier contained child pornography was stale, and thus did not provide probable cause for search warrant for seizure of computer, despite investigating officer's affidavit stating child pornography collectors routinely maintained their materials for long periods of time, where the officer did not specify the basis for his statement, and there was no evidence that defendant was a pedophile or that he engaged in any ongoing criminal activity.).

In *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, at *3 (W.D.N.Y. May 16, 2011), one year had passed between the discovery of child pornography and the issuance of search warrant.  Judge Arcara found that the information to be stale. The Court also easily disposed of the government's contention that all those accused of a child pornography crime can be considered "hoarders," thus eliminating stateless.  The Court wrote that there was "no evidence suggesting that this defendant collected or hoarded child pornography.  He did not subscribe to any illicit internet publications or e-groups.  He did not have a pre-paid membership. There was no evidence indicating that he had 'collected' or downloaded many illicit images." *Id.*

The same is true in this case.  The account holder helloimbored100 sent inappropriate images and requested inappropriate images over the course of 2 or 3 days.  Shane Guay did not subscribe to any illicit internet publications or e-groups.  Shane Guay did not have a pre-paid membership to any child pornography website.  There was no evidence indicating that Shane Guay had 'collected' or downloaded many illicit images.  Had any of this evidence existed, it

would have been easy enough for the police to acquire it and present it to the justice. They had

18 months to track down other information that would demonstrate probable cause. The police

located the IP address of the user, they had a cell phone number and text and call records; they

had an email address, they had a physical address; they had access to Mr. Guay's Facebook

account and the accounts of alleged victims, yet, tellingly, they were not able to produce any

information that the user had engaged in any illicit behavior since November of 2016.

In fact, just a month before the warrant was issued, on April 17, 2018, an investigator

with the Harris County Georgia Sherriff's office emailed Shane Guay and informed him that he

is conducting an investigation into Shane. The user of the email address believed to be Shane

Guay immediately responded: "I have deleted everything social media wise.  Anything that has

happened is over with.  I was going through rough times and was saying things that were stupid.

It was a massive mistake and I regret it." **(Ex. C.)**  Officer Walsh did not inform Justice Palumbo

about this exchange.  Not only is there no evidence Mr. Guay was a hoarder, there was evidence

to the contrary – that the evidence had been deleted. Yet this crucial information was not

conveyed to Justice Palumbo.

Judge Arcara found the passage of one year resulted in unconstitutional stateless.  A full

year and a half passed in this case.  This information rotted on the vine.

In *United States v. Ohlson*, No. 11-CR-225-A, 2012 WL 913037, at *4 (W.D.N.Y. Mar.

16, 2012), Judge Arcara again found information in the warrant to be stale when 13 months

passed between the conduct and the search-warrant issuance.  Much like this case, Judge Arcara

noted that "the warrant affidavit in this case showed that a person accessed an indeterminate

number of images of child pornography during one, relatively short, five-day period of March

15, 2010 through March 19, 2010, without a showing that a person intentionally retained any images of child pornography." *Id.*

In *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), Judge Skretny *and the Second Circuit Court of Appeals* found information contained in a warrant application to be stale where nine months passed between the discovery of an image of child pornography and the issuance of the warrant.

Because the alleged conduct occurred over a period of only a few hours 18 months before the warrant was issued, the information contained in the warrant was necessarily stale, and the warrant therefore lacked probable cause.

### 1.  Good faith does not save the legally deficient warrant.

The doctrine of good faith, which will be inevitably raised by the government in effort to save this otherwise deficient warrant, does not help. The burden is on the government to demonstrate the objective reasonableness of the officers good faith reliance when the warrant is invalid.  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citing *United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999) and *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)).

 For an officer to be able to claim the benefits of the good faith exception, his reliance on a warrant must be objectively reasonable.  *United States v. Leon*, 468 U.S. 897, 922 (1984). "Thus, the good faith exception cannot shield [ ] an officer who relies on a duly issued warrant in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4)

where the warrant is so facially deficient that reliance upon it is unreasonable. *Raymonda*, 780

F.3d at 118 (quoting *Clark*, 638 F.3d at 100).

### A.  Town Justice Palumbo was knowingly misled.

 "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for

Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the

resulting costs" of suppression.  *Davis v. United States*, 564 U.S. 229, 238 (internal quotation

marks omitted).

Here, Officer Walsh recognized the extreme staleness of the information and thus

included a section of law meant to persuade Justice Palumbo that the application was not stale.

Officer Walsh cited at least seven cases from random and various jurisdictions where judges

have found information was not stale.  Critically, Officer Walsh omitted all of the many cases –

including precedential caselaw from the Second Circuit – finding that the passage of as little as 9

months rendered information stale.  Officer Walsh did not inform Justice Palumbo about

*Raymonda*, for instance, where the Second Circuit concluded that a 9-month passage of time

resulted in stale information.  He did not inform Justice Palumbo of *Coon* or *Ohlson* – cases from

this very district dealing with child pornography where information much fresher than the 18-

month old information at issue here was deemed to be stale.  By presenting only one side and by

deliberately omitting binding caselaw to the contrary, Officer Walsh left the intended impression

that staleness is simply not an issue when it comes to cases dealing with child pornography.  In

fact, Officer Walsh unabashedly and explicitly made this very claim in his application: "In spite

of the fact that there is no hard and fast rule, the federal courts are in seemingly solid

agreement," Officer Walsh falsely told Justice Palumbo, "**that the temporal proximity of child**

**pornography evidence is immaterial to search warrant affidavits**." (Application, at p. 26; emphasis added). Justice Palumbo was misled.

In fact, it stands to reason that Officer Walsh omitted this information and intentionally applied for the warrant before a Town Justice instead of a Magistrate Judge from this Court, who would have inevitably been keenly aware of *Raymonda* and the cases from this District predating *Raymonda*. Indeed, Homeland Security Investigation, an arm of the Department of Homeland Security and a federal agency that routinely applies for warrants before federal magistrate judges, was already involved in this case at the time the warrant was sought before Justice Palumbo. Indeed, HSI received a referral to investigate this case in April of 2018. HSI Special Agent Nicholas Melchiorre had already inspected a phone of a potential victim and issued an summons to Instagram, LLC. The agency was intimately involved in investigating the case. But they did not apply for a warrant before a federal judge.

Instead, immediately after New York State Police secured this warrant based on a false and misleading representation of the law, HSI went to New York State Police headquarters "to take custody of 26 pieces of evidence seized from the residence of Shane GUAY." (HSI report of investigation, **Ex. D**.). Instead of proceeding with a search-warrant application in this district before a federal judge who certainly would be aware of *Raymonda*, they went to an Olean Town Justice and provided federal caselaw from other jurisdictions inconsistent with *Raymonda*. Then, almost immediately after the search warrant signed and executed, federal agents resumed prosecuting and investigation this case on the federal level. This fact must be weighed when deciding whether the police acted in good faith. Indeed, it is submitted that federal district courts should be particularly cognizant of the potential for error in town courts because of the potential for lack of training and expertise among town judges. *See, e.g.,* In Tiny Courts of N.Y., Abuses

of Law and Power, Glaberson, W., New York Times, September 25, 2006, https://www.nytimes.com/2006/09/25/nyregion/25courts.html (site last visited, December 24, 2019). This is especially true where the Town justice is presented with caselaw that is superficially compelling, but actually in conflict with precedent.

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.), on reh'g, 91 F.3d 331 (2d Cir. 1996). With *Coon*, *Ohlson*, and *Raymonda*, the police have exhausted their three wishes with the good-faith genie. Especially after *Raymonda*, a precedential case from the Second Circuit, Officer Walsh should have been aware that if 9-month old information is stale in the child-pornography context, then certainly 18-month old information is too. At the very least, it was reckless to tell Justice Palumbo that "temporal proximity" is simply "immaterial." And this is coupled with the fact that Officer Walsh omitted the fact that they had no information suggesting Mr. Guay was a hoarder and that the only information they did have is that the suspect "deleted everything." And this is especially true where the alleged offending conduct is similar to the conduct at issue in *Raymonda*, in that it is discrete (limited to mere minutes of activity over the course of two, maybe three days), remote, and there is no evidence that the alleged offender exhibited any of the characteristics of hoarding.

What is more, the Second Circuit applied the "good faith" doctrine in *Raymonda* at least in part because the "relevant legal deficiency 'was not previously established in precedent,' and so "the agent's failure to recognize that deficiency cannot vitiate good faith." 780 F.3d at 119 (quoting *Clark*, 638 F.3d at 105). That's no longer true after the *Raymonda* opinion was issued. Because Second Circuit decisions do establish precedent, police officers and agents can no longer claim that this legal deficiency has not been established. *See United States v. Buck*, 813

F.2d 588, 593, n. 2  (2d Cir. 1987); *see also Clark*, 638 F.3d at 105 ("Of course, once the

requirement is established, police may not thereafter claim reasonable reliance on warrants

secured in the absence of compliance.").  Yet, not only did Officer Walsh disregard *Raymonda's*

holding by presenting 18-month old, stale information to Justice Palumbo, he also knew his

application was stale and so included non-binding case law inconsistent with *Raymonda* while

affirmatively omitting any reference to this seminal case and evidence suggesting the evidence

was deleted, all in an ultimately successful effort to mislead the magistrate.

### B.  18-month old information is extremely stale, rendering the warrant so lacking in probable cause that reliance on it was unreasonable.

"Reviewing courts will not defer to a warrant based on an affidavit that does not provide

the magistrate with a substantial basis for determining the existence of probable cause" *id*. at 914

citing *Illinois v. Gates,* 462 U.S. 213, 239 (1983), and "officers cannot reasonably rely on a

warrant issued on the basis of an affidavit 'so lacking in indicia of probable cause as to render

official belief in its existence entirely unreasonable.'"  *See Clark,* 638 F.3d at 100.

Although a judge's legal error in his or her determination of probable cause will not

*automatically* lead to the conclusion that the agents acted unreasonably, *United States v. Falso*,

544 F.3d 110, 129 (2d Cir. 2008), reliance is unreasonable when such error includes information

that is more than 18 months old at the time of the search (double the amount of time found stale

in a recent precedential decision specifically omitted from the warrant application), and where

there is a total lack of information in the warrant application demonstrating that that Mr. Guay

was involved in any suspicious conduct in the ensuing 18 months.  "In such circumstances, one

*Leon* concern, *i.e.,* that 'a reasonably well trained officer would have known' that the challenged

warrant was not supported by probable cause, is reinforced by another, *i.e.,* deception, or at least

an apparent intent to deceive." *Clark*, 638 F.3d at 103. (internal citations omitted).  This is precisely the circumstances here.

**SCHEDULE II**

**DISCLOSURE UNDER RULES 12 AND 16**

Under Rules 12(b)(3)(E) and 16(a)(1)(A)-(G) of the Federal Rules of Criminal Procedure, Mr. Guay moves to compel discovery of any items, or information, to which the defendant is entitled, including, but not limited to:

      a.      Law enforcement reports of the events in question and their aftermath including any rough notes taken by law enforcement.

      b.      The parameters of, and any note or documentation of, the communication and cooperation between state and federal law enforcement authorities.

      c.      Any and all relevant written or recorded statements made by the defendant.  Fed. R. Crim. P. 16(a)(1)(B).  This request is not limited to statements made in response to interrogation or to statements the government intends to introduce at trial. *See United States v. Thomas*, 239 F.3d 163, 168 (2d Cir. 2001).

      d.      Any and all books, papers, documents, data, photographs, or other tangible objects, buildings or places if they are material to the preparation of the defense, the government intends to introduce them as evidence, or they were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).

      e.      Any and all results or reports of any physical or mental examination, or scientific experiment, that is material to the defense or that the government intends to introduce as evidence.  Fed. R. Crim. P. 16(a)(1)(F).  This includes, but is not limited to,

13

any and all lab reports related to the Indictment not covered under Fed. R. Crim. P. 16(a)(1)(E).

      f.     A written summary of any testimony that the government intends to introduce as evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence relating to expert witness testimony.  Fed. R. Crim. P. 16(a)(1)(G).  The summary must include the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications.  *Id.*

      g.     All discovery provided in underacted form.

      h.     A copy or inspection of any and all items seized on the day of Defendant's arrest.

      i.     Any and all photographs regarding the Defendant's arrest.

      j.     Disclosure of the names and identities of expert witnesses that the Government intends to call at trial, their qualifications, subject of testimony, and reports and the results of tests, examinations or experiments which are material to the preparation of Defendant's defense or which are intended for use by the Government in its evidence-in-chief at trial.

      k.     Pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure, the Defendant requests written notification of any evidence the Government intends to use at its case-in-chief that may, in any way, be subject to a motion to suppress in which the Defendant is entitled to discover pursuant to Rule 16.  Although the Government has provided discovery, it is unclear exactly what evidence and statement(s) it intends to use at trial.

      l.     A copy of the search warrant for 147 North 8th Street, assuming it exists. I have a copy of the application, but not the actual warrant.

14

The above-outlines requests are ongoing.  Pursuant to Rule 16(c) of the Federal Rules of Criminal Procedure, the government's disclosure obligation continues up through and during the trial.  *See United States v. Matthews*, 20 F.3d 358 (2d Cir. 1994). In the event new materials responsive to these requests are produced, discovered, or otherwise come into the possession of the government or its agents, said materials should be provided to the defendant without delay.

**DISCLOSURE OF WITNESSES' STATEMENTS**

The Defendant moves for disclosure of witnesses' statements pursuant to 18 U.S.C. § 3500 ("*Jencks* Act") and Rule 26.2 of the Federal Rules of Criminal Procedure.

The Defendant moves for an order requiring production of *Jencks* Act materials, namely, all statements and reports in the possession of the United States which were made by Government witnesses or prospective Government witnesses and which relate to the subject matter about which those witnesses may testify, as per the *Jencks* Act, 18 U.S.C. § 3500, and Rule 26.2, Federal Rules of Criminal Procedure.

The term "statements" includes:

i.   any written statement made by a witness and signed or otherwise adopted or approved by him;

ii.  stenographic, mechanical, electronic or other recording, or transcriptions thereof, which are a substantially verbatim recital of an oral statement made by a witness and recorded contemporaneously with the making of such oral statement;

iii. a statement, however taken or recorded, or a transcription thereof, if any, made by a witness to a grand jury;

iv.  records of statements made to a Government agent which fairly and fully reflect the statements made without distortion, *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995);

    v.       Any and all rough notes of witness interview(s) taken or obtained in any investigation of the Defendant including federal, state, local, and other investigations whether or not the contents thereof have been incorporated in official records;

    vi.     Any notes and memoranda made by Government counsel during the interview of any witness(es) intended to be called by the Government in their direct case, *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and

    vii.    All surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

## PRESERVATION OF ROUGH NOTES

Defendant moves for an order of this Court requiring all federal, state or local agents and officers who participated in the investigation of the Defendant to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.  This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady, Agurs, Giglio*, the *Jencks* Act (18 U.S.C. § 3500), Rule 26.2 of the Federal Rules of Criminal Procedure, and/or the Fifth and Sixth Amendments of the United States Constitution.

The defense also requests that this Court direct the Government to preserve notes made by Government witnesses, including state and local authorities, in the event they later became discoverable as either the Defendant's statement, or that of another witness. *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995).

**SCHEDULE III**

### *BRADY* MATERIAL

Under *United States v. Booker*, 543 U.S. 220 (2005), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Giglio v. United States*, 405 U.S. 150 (1972), *Brady v. Maryland*, 373 U.S. 82 (1963), *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), and the American Bar Association Rule of Professional Conduct 3.8(b), the defendant moves to compel disclosure of any and all information, whether admissible at trial or not, regarding the facts or occurrences or the absence of facts or occurrences, known to the government or which could become known upon diligent inquiry to those under the government's direction or control, that is in any way exculpatory or favorable to the defendant, whether by detracting from the government's case or the credibility of the government's witnesses, or supportive of the positions urged, or likely to be urged, by the defendant at any stage of the proceedings.

It is impossible, and indeed not required under *United States v. Agurs*, to make a specific request for all such material.  427 U.S. 97 (1976).  Nevertheless, disclosure should include, but is not limited to, the following:

        a.      Any information that tends to undercut, or negate, the proof of any element of a charged offense.  *See Cone v. Bell*, 556 U.S. 449 (2009).

        b.      Any information that could corroborate a defense suppression theory or a version of the events that may require suppression of evidence.  *See generally, United States v. Severdiija*, 790 F.2d 1556 (11th Cir. 1986).

        c.      Any inconsistent statements made by any potential government witness or informant, including, but not limited to, statements made during a proffer meeting or a trial preparation interview, or made to a responding or investigating officer

or to any other person, or made during a polygraph examination, whether or not memorialized. *See Strickler v. Greene*, 527 U.S. 263 (1999).

d.      Any information that tends to undercut, or negate, the credibility or the believability of the factual account of any potential government witness or informant. *See Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001).

e.      Any assistance, favorable treatment, or benefit offered, held out, promised, or provided to any potential government witness or informant. *See Banks v. Dretke*, 540 U.S. 668 (2004); *United States v. Bagley*, 473 U.S. 667 (1985).

f.      Any information or evidence that tends to suggest any potential government witness's or informant's possible bias, interest, hostility, or reason to fabricate. *Id*.

g.      Any information regarding inconsistent or contradictory scientific tests or experiments; or lack of inculpatory results or findings from tests; or possible weaknesses in a potential expert witness's testimony. *See Simmons v. Beard*, 590 F.3d 223 (3d Cir. 2009); *see also Paradis v. Arave*, 240 F.3d 1169 (9th Cir. 2001).

h.      Any information that tends to undercut, or negate, an identification of the defendant as the perpetrator, and/or suggest that another person may be the actual perpetrator. *See Kyles*, 514 U.S. 419

i.      Any information that tends to support a complete or mitigating defense to any charged offense, or that buttresses a potential defense version of pertinent facts. *See Youngblood v. West Virginia*, 547 U.S. 867 (2006).

j.      Any information that could provide a basis for an alternative defense strategy, or that tends to support a defense theory or factual version different from that

which has been announced or is being pursued.  *See Graves v. Dretke*, 442 F.3d 334 (5th Cir. 2006).

k.      Any information that tends to undercut, or negate, a potential theory of the defendant's motive for committing the crime, or that suggests an absence of any motive. *See Mendez v. Artuz*, 303 F.3d 411 (2d Cir. 2002).

l.      Any information which would mitigate the defendant's involvement in the crimes charged or subject the defendant to sentencing enhancements or adjustments.  *See United States v. Jackson*, 345 F.3d 59 (2d Cir. 2003); *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998); *Tate v. Wood*, 963 F.2d 20 (2d Cir. 1992).

Due process requires that the defendant be given the aforementioned material in advance of trial so that investigatory leads may be pursued in sufficient time to permit a full preparation of the Defendant's case.  *United States v. Bejasa*, 904 F.2d 137, 140-141 (2d Cir. 1990); *United States v. Agajanian*, 852 F.2d 56 (2d Cir. 1988); *United States ex rel. Lucas v. Regan*, F.2d 1, 3 n.1 (2d Cir. 1974).

Additionally, due process requires that the defendant be given the material not only to aid in preparation for trial, but also to aid in his determination of whether or not to plead guilty. *Avellino*, 136 F.3d at 255; *Tate*, 963 F.2d at 20.

**SCHEDULE IV**

## DISCLOSURE UNDER RULES 404(b), 608, AND 609

**A.      Federal Rule of Evidence 404(b)**

Under Rule 12(b)(4) of the Federal Rules of Criminal Procedure and Rules 104(a) and 404(b) of the Federal Rules of Evidence, the defendant respectfully requests that the government notify the defendant of any evidence the government contends would be admissible under Fed. R. Evid. 404(b).

To permit the defendant the opportunity to file appropriate motions prior to trial, the defendant requests to be fully apprised of "evidence of other crimes, wrongs, or acts" or transactions involving the defendant which are outside the scope of the Indictment and which the government will seek to introduce to demonstrate "motive, or absence of mistake or accident." Fed. R. Evid. 404(b).

The defendant should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests.  By notifying the defendant in advance of trial, the defendant can file appropriate motions *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Fed. R. Evid. 404(b) evidence proffered by the government.

The pretrial determination of this evidentiary question will serve the smooth operation of the trial, eliminate possible extraneous objections, and assist both the government and the defendant in the presentation of evidence.

**B.      Federal Rules of Evidence 608 and 609**

Under Rules 608 and 609 of the Federal Rules of Evidence, the defendant respectfully requests disclosure of any and all evidence, instances of misconduct against a witness, and prior convictions the government intends to use to impeach the defendant's credibility if the defendant should choose to testify.  In the event the government intends to use such evidence, the defendant requests a pretrial hearing to determine the admissibility of such evidence.

**SCHEDULE V**

## FURTHER RELIEF

Mr. Guay respectfully reserves the right to make further and additional motions which may be necessitated by the Court's rulings on the relief sought herein.  The specific requests contained herein are not meant to limit or preclude future requests by the defendant for further relief from the Court as appropriate.

The defendant requests that the Court grant such other and further relief as is just and proper.

**DATED:**  January 24, 2020, Buffalo, New York.

Respectfully submitted,


**/s/Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341; 551-3346 (fax)
jeffrey_bagley@fd.org
*Attorney for Defendant Shane Guay*


**TO:**   Meghan A. Tokash
Assistant United States Attorney