IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

     v.                                  19-CR-103-JLS

SHANE GUAY,

                  Defendant.

_____

## GOVERNMENT'S RESPONSE
## TO DEFENDANT'S OMNIBUS MOTIONS

THE UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Meghan A. Tokash, Assistant United States Attorney, of counsel, hereby files the government's response to the defendant's pretrial omnibus motions (Dkt. 31).

## PRELIMINARY STATEMENT AND BACKGROUN INFORMATION

In April of 2018, the Homeland Security Investigations (HSI) Buffalo Office received information from the Harris County Sheriff's Office in Georgia that the defendant, residing in Olean, New York, sent images of his penis to two minor females (residing in Harris County) via Instagram.   Instagram is an American photo and video-sharing social networking service owned by Facebook, Inc.   Instagram is akin to a simplified version of Facebook, with an emphasis on mobile use and visual sharing. Just like other social networks, users can interact with other users on Instagram by following them, being followed by them, commenting, liking, tagging and private messaging. Users can also save the photos they see

on Instagram.

On April 17, 2018, an Investigator in Georgia sent the defendant an e-mail requesting to speak with him about the matter and the defendant responded, via e-mail, "I was going through rough times and was saying things that were stupid. It was a massive mistake and I regret it." In June of 2018, HSI received information from the New York State Police (NYSP) that the defendant was also engaging in sexual chats—including sending images of his penis— with approximately fifteen females in the sixth grade attending the Ayer/Shirley Middle School in Massachusetts.

Based on this information, on June 5, 2018, the NYSP and HSI executed a search warrant at the defendant's residence in Olean, New York.   Police seized a number of electronic devices from the defendant's residence, including:

- one (1) Acer Aspire Laptop, bearing serial No. LU5DE0D1600347C6E41601, which was found to contain thirteen images and two videos of child pornography, some of which depicted prepubescent children;

- one (1) Compaq Presario Tower, bearing serial No. MXK4181PW3, which was found to contain fifteen images of child pornography, some of which depicted prepubescent children;

- one (1) Dell Inspiron Laptop, bearing serial no. 6536C91, which was found to contain approximately two videos of child pornography, which depicted prepubescent children; and

- one (1) LG G4 cellphone, bearing serial no. 602CYCV0219059, which was found to contain approximately one-hundred and twenty-six images and one video of child pornography, some of which depicted prepubescent children.

During the search warrant execution, NYSP Investigator Daniel Walsh and HSI Special Agent (SA) Kathryn Gamble conducted a non-custodial interview with the defendant at the NYSP barracks in Olean, NY. When questioned about inappropriate conversations with underage females on Instagram, the defendant responded, "Obviously I did it, but I don't recall".   Later in the interview, the defendant stated, "I'll admit it.   I just don't personally remember it, but I did it.   I'll say I did it, but I don't remember sitting there doing it," and "I know I fucked up and said (inaudible) things I shouldn't have; I admit that, but I don't remember every single time."

The defendant admitted to knowingly sending pictures of his penis to minor females that identified themselves as being between the ages of eleven and thirteen years of age, as well as soliciting nude images of the minor females in return. The defendant then admitted that he received nude images of minor females exposing their breasts and vaginas (between the ages of 14 and 16) via Instagram in the November/December 2017 timeframe. The defendant stated that he last exchanged nude images with minor females in the December 2017/January 2018 timeframe and told agents that he knew that it was wrong to exchange nude images with minor females.   The defendant confirmed that he was the user of the Instagram account associated with usernames "lets69befriends," "helloimbored100," "heythereitsme56" as well as the e-mail address associated with these accounts.

Further, the defendant stated that he used both a LG G4 and an LG G6 cellular phone

to send and receive child pornography to and from minor females (although the government did not recover any evidence of distribution).   These phones were located inside the residence at the time of the search warrant and seized. The defendant told agents that he located minor females to target for sexual conversations by locating one minor female on Instagram, then going through their friends/contact list, and thereafter randomly messaging those individuals.

HSI identified two Instagram conversations in which the defendant requested and received images of child pornography from minor victims. One of these victims (Victim 1, hereinafter MV1) resided in Ayer, Massachusetts. In April of 2019, MV1 appeared for a forensic interview in Boston, Massachusetts.   During that interview, MV1 disclosed that she sent a photo of her vagina to the defendant in 2016. At the time that she sent the image, she was twelve years of age. Police showed MV1 the image of suspected child pornography and she identified the image as a photo of her vagina which she sent to the defendant. Count One of the Indictment is associated with this event. Specifically, on that date in question, the defendant stated, via Instagram, "Get a pic of your hole and spread it open so I can see." Approximately twelve hours later in the conversation, the defendant stated, "Send pics in the chat and I'll do whatever you want," "Baby", "Hi", "Hi", at which juncture MV1 sent the defendant a photo of her vagina.

The other victim (Victim 2, hereinafter MV2) resided in Cape Town, South Africa. HSI scheduled a forensic interview with the minor victim in South Africa. During that interview, MV2 disclosed that she sent photos of her vagina to the defendant upon his request in 2016. At the time she sent the images, MV2 was thirteen years of age. Police showed MV2 the two images of child pornography recovered from Instagram and she identified those

images as her vagina. Specifically, as to Count Two of the Indictment, MV2 sent an image of her vagina to the defendant after he sent her a message requesting, "Can I see one of you?" and "Yummy…can you spread your vagina open for me? I wanna pretend to lick it."

As for Count Three of the Indictment, MV2 sent an image of her vagina to the defendant after the defendant sent her a message requesting, "Spread it open lol," "With your fingers…like the hole," and "Can I see your hole before I show you mine." The receipt charges in Counts Seven and Eight of the Indictment are associated with the create dates (or download dates) for two images of child pornography discovered on the defendant's devices. Counts Nine through Twelve are associated with each electronic device which the defendant possessed which contained child pornography.

**POINT I:    DEFENDANT'S MOTION TO SUPPRESS THE SEARCH WARRANT BASED ON STALENESS SHOULD BE DENIED**

The issue of staleness arises frequently in probable cause determinations in child pornography investigations. Staleness becomes an issue as time passes between the act or information on which probable cause is based and the application for a search warrant. Probable cause to search a location depends on a practical assessment of whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[S]tale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). When potential staleness problems arise, the question becomes whether, at the time of the warrant application, the information relied upon in the affidavit established a fair probability that evidence would be found at the location in question. *United States v. Spikes*, 158 F.3d 913,

923 (6th Cir. 1998). Questions of stale information may arise in child pornography cases because the nature of the investigations can result in extended periods of time passing between the initial discovery of information to support probable cause and a search warrant application. Increasingly, however, this time passage is not fatal to search warrants or the fruits of their searches.

Although the age of information in a search warrant affidavit is one factor in determining whether probable cause exists to search a given location, no strict temporal test exists, and courts have found that, in child pornography cases, extended periods of time may pass without rendering the information stale. *See*, *United States v. Carroll*, 750 F.3d 700, 703 (7th Cir. 2014).   Courts increasingly recognize the tendency of consumers of child pornography to preserve such images and the potential to recover the files even after extended periods or deletion.

The Fourth Amendment prohibits unreasonable searches and seizures and, as interpreted, requires that search warrants be based on a determination of probable cause. U.S. Const. amend. IV; *Gates*, 462 U.S. at 238. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he or she] ha[s] reasonably trustworthy information [are] sufficient . . . to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).   Probable cause to search a location exists where one may reasonably believe that a crime has been committed and evidence of the crime will be found in the place in question. *Gates*, 462 U.S

6

at 238. The standard calls for neither proof beyond a reasonable doubt nor a preponderance of evidence, and courts have rejected efforts to increase the requirements of the probable cause standard. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (noting that the fair probability standard "does not demand any showing that such a belief be correct or more likely true than false."); *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (noting that probable cause requires "only a probability . . . not a probability that exceeds 50 percent").

The decision about whether probable cause to search exists is not technical but a "practical, common-sense decision" made in light of the totality of the circumstances. United *States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012); *Gates*, 462 U.S at 241. A magistrate issuing a search warrant must find "a fair probability that contraband or evidence of a crime will be found in a particular place" and may rely on facts and circumstances described in the search warrant affidavit as well as law enforcement experience and inferences. *Id.*, at 232, 238. To establish probable cause to search a location, the information in the affidavit must provide "a substantial basis for concluding that probable cause" exists. *Id.*, at 214.

Staleness concerns whether the information supporting probable cause relates to present conditions. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). A court may conclude that probable cause is lacking where the facts presented are "not 'sufficiently close in time to the issuance of the warrant' that 'probable cause can be said to exist'" at the time of the search warrant application or a subsequent search. *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (quoting United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)). The question of staleness asks whether, *at the time of the warrant application*, there exists a fair

probability that a crime was committed and that evidence of that crime will be found in the place to be searched.

Courts have made clear that "no bright line time limits" dictate when information becomes stale and that the staleness analysis must remain flexible, consistent with the totality-of-the-circumstances probable cause analysis. *United States v. Carroll*, 750 F.3d 700, 705 (7th Cir. 2014).

In *United States v. Vosburgh*, the court noted that, although the age of information is a factor, "[t]o analyze a claim of staleness, we must do more than simply count the number of the days between the date of the alleged criminal activity and the date of the warrant. We must also consider 'the nature of the crime and the type of evidence' involved."   602 F.3d 512, 528 (3rd Cir. 2010) quoting *United States v. Zimmerman*, 277 F.3d. 426, 434 (3d Cir. 2002).   In child pornography cases, courts recognize that the staleness inquiry is "unique." *Raymonda*, 780 F.3d at 114 (quoting United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2015)).

A. Staleness Evaluations in Child Pornography Cases

Courts across jurisdictions approach the staleness analysis in child pornography cases differently, but they consistently examine two to four factors. Almost all courts consider a) the nature of the crime and b) the nature of the evidence sought, and some additionally look to c) the criminal suspect and d) the place to be searched. *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). The first two factors have become increasingly

important in child pornography cases, as courts in various jurisdictions emphasize that such "a staleness inquiry must be grounded an understanding of both the behavior of child pornography collectors and of modern technology." *Carroll*, 750 F.3d at 704 (7th Cir. 2014); *see also* United States v. Self, 492 F. App'x 762, 764 (9th Cir. 2012).

    1.  <u>Nature of the Crime</u>

Courts recognize that child pornography offenses are typically continuous in nature rather than fleeting and are characterized by a tendency to secretly hoard or collect illicit materials.   In *United States v. Lemon*, the court observed that a "lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." 590 F.3d at 614 (quoting *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)); *see also United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014).   Evidence of continuous, non-fleeting behavior and collection of child pornography weigh against a finding of staleness.

Courts repeatedly acknowledge that "child pornography is not a fleeting crime" and that, because such offenses are "generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *Frechette*, 583 F.3d at 378 (6th Cir. 2009) (quoting United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009)). Evidence of the continuous nature of child pornography offenses can take various forms.

Courts have rejected staleness claims where evidence indicated the offender

maintained access to the same method of receipt of illicit material for an extended time. The court in *United States v. Lemon* held that the defendant, whose last known exchange of child pornography had occurred eighteen months prior to the issuance of the warrant, was likely to still be trading in child pornography because he had continued to use the same IP address and screen name in addition to exhibiting behavior indicative of a collector. 590 F.3d at 614–15. Similarly, in *United States v. Harvey*, the court found that information about the defendant's receipt of mailings from child pornographers thirteen to fifteen months prior was not stale because he had established a post office box under a false name for their receipt and had received three mailings only two months prior. 2 F.3d 1318, 1323 (3d Cir. 1993).   The act of maintaining the post office box for the receipt of one type of mail suggested continuous activity, which, in combination with the tendency of child pornography offenders to retain collections of images, precluded a finding of staleness.

The continuing nature of child pornography offenses may also be evident from information that points to a method of retention or long-term ability to share such material. In *United States v. Riccardi*, the court found that a five-year-old Kinko's receipt was not stale because, in combination with evidence concerning the defendant's sustained interest in minors and the tendencies of child pornography collectors, it showed that the defendant "had the desire and ability to convert Polaroid photographs to a digital format," suggesting that he may seek to distribute and exchange such materials in the future. 405 F.3d 852, 861 (10th Cir. 2005).   Similarly, the court in *United States v. Wiser-Amos* found that the defendant's installation and maintenance of peer-to-peer file sharing software demonstrated "a longstanding, serious interest in obtaining and distributing child pornography. No.

3:07CR-42-M, 2007 WL 2669377, at *7 (W.D.Ky. Sept. 7, 2007). Such evidence points to a desire to retain or share child pornography over an extended period.

In addition to evidence that the suspect's interest is ongoing, information that the suspect exhibits the behavior of a collector or hoarder of child pornography frequently prevents a staleness finding. Courts have "long recognized [that] persons with an interest in child pornography tend to hoard their materials and retain them for a long time." *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010). The difficulty of obtaining child pornography means that collectors are reluctant to discard such highly valued images and tend to hoard them. *Id.*; *see also* United States v. Notman, No. 15-2770, 2016 WL 4169137, at *2 (8th Cir. 2016). Thus, "it is the nature of child pornography . . . that causes recipients to become 'collectors.'" *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010). When offenders fit the collector profile, courts are less likely to find staleness.

Search warrant applications may rely on the experience and inferences of law enforcement when presenting information about collector behavior. *See, e.g.*, *Notman*, 2016 WL 4169137, at *2; United States v. Carroll, 750 F.3d 700, 704 (7th Cir. 2014). Courts have established "that officers may 'draw on their own experience and specialized training to make inferences . . . that might well elude an untrained person." *Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) (quoting *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002)); *see also*, *United States v. Steppello*, 664 F.3d 359, 364 (2d Cir. 2011) ("As long as the elements of the pattern are specific and articulable, the powers of observation of an officer with superior training and experience should not be disregarded."). Law enforcement working on

child pornography cases can speak from training and experience about the characteristics of individuals who collect and trade child pornography. Such "profile" or boilerplate information is permissible when accompanied by a sufficient "foundation which shows that the person subject to the search is a member of the class" identified. *United States v. Prideaux-Wentz*, 543 F.3d 954, 960 (7th Cir. 2008) (quoting *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990)).

Courts infer that suspects are hoarders or collectors of child pornography based on the behavior of the suspect and information provided about the tendencies of collectors. Courts have noted that "where evidence indicates that an individual has uploaded or possessed multiple pieces of child pornography, there is enough of a connection to the 'collector' profile to justify" discussion of the typical behavior of collectors in the search warrant affidavit. *Pappas*, 592 F.3d at 804. Courts have also inferred collector status based on a single incident of possession or receipt of child pornography. In *United States v. Vosburgh*, the court held that the defendant could be considered a collector where he repeatedly attempted to access one link to child pornography that required several steps in order to download and view the material. 602 F.3d at 517, 528. Another court inferred that a suspect who received nineteen files within seven minutes was a collector. *United States v. Hay*, 231 F.3d 630, 634–36 (9th Cir. 2000). Such evidence permits application of understandings about the typical behavior of child pornography collectors to the offender in question. Information about typical child pornography collector behavior, like evidence of continuous criminal activity, weighs heavily against a finding of staleness.

2. Nature of the Evidence Sought

The nature of the evidence sought has become an increasingly important factor in the staleness analysis in child pornography cases. Courts have long noted that "images of child pornography can have an infinite life span," unlike evidence that may be consumable or perishable, such as drugs. *United States v. Frechette*, 583 F.3d 374, 378–79 (6th Cir. 2009). Courts have also observed that the nature of photographs and videos suggests such material would be preserved and retained and that technology advances have only made retention simpler. *United States v. Joubert*, 980 F.Supp.2d 53, 61 (D. N.H. 2014); *United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010). The ability to recover files after deletion has also increasingly been noted as an important consideration. *See, e.g.*, *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010); *Hay*, 231 F.3d at 638.

Law enforcement may discuss these issues in the search warrant affidavit as they would collector behavior. Given that child pornography investigations are typically computer and internet-based, law enforcement involved in these investigations often receive specialized training regarding the use of computer technologies, networks, and software to facilitate the production, storage, and trade of child pornography. Agents working on these cases may be trained particularly on the forensic removal of evidence of child pornography and child exploitation from technologies and able to speak to the potential for recovering files.

The potential to recover evidence with modern technology has recently been emphasized in staleness analyses. The court in *United States v. Seiver* recognized a "need to ground inquiries into 'staleness' and 'collectors' in a realistic understanding of modern

computer technology." 692 F.3d 774, 778 (7th Cir. 2012). The court observed that questions of staleness and whether or not suspects are "collectors" hold less significance in light of the potential for forensic recovery of even deleted files. *Id.* at 776. Although technology exists that can expedite the overwriting of deleted data, the use of such technology is uncommon, and even if overwriting has begun, a deleted file may be reconstructed from bits of retrievable data. *Id.* at 776–77. Only "rarely," the *Seiver* court concluded, will the possibility that a deleted file is unrecoverable or that a computer has been sold or destroyed "be so probable as to destroy probable cause to believe that a search of the computer will turn up the evidence sought." *Id.* at 777. The court also commented that even if a suspect has deleted a file and emptied the trash bin such that he or she "no longer 'possesses' the file in a meaningful sense," the crime's requirement of "knowing possession" would not eliminate probable cause for a search of the computer "unless the statute of limitations on possession had expired" at the time of the search. *Id.* at 778. Information regarding the nature of the evidence sought in child pornography cases, particularly the recoverability of such material, consistently weighs against a finding of staleness.

### B.   Staleness Evaluations in Child Pornography Cases

Courts have found information to be stale where the evidence fails to show that the suspect is an intentional collector of child pornography. The court in *United States v. Raymonda* noted that courts may infer collector status based on numerous factors, including a single incident, but that the information must offer more than evidence of access at a single time. 780 F.3d 105, 116–17 (2d Cir. 2015). In *Raymonda*, nine-month old evidence that the defendant once accessed thumbnails of child pornography was stale because it failed

14

"to show that he accessed them in circumstances sufficiently deliberate or willful to suggest that he was an intentional 'collector' of child pornography." *Id.* at 117. The court held that "absent any indicia that the suspect was a collector of child pornography likely to hoard pornographic files . . . a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary traces of that incident have likely cleared." *Id.*

In this case, unlike *Raymonda*, there is more than one thumbnail image of child exploitation involved in the defendant's criminal conduct. At least two different state police agencies (Georgia and Massachusetts) identified multiple child victims who were contacted by the defendant in attempts—which were sometimes successful—to entice those children to send him pictures of their breasts and vaginas.   Additionally, the defense's argument that Officer Walsh only cited positive case law with respect to staleness, also fails. The time lapses in *Coon*, *Ohlson* and *Raymonda* may be persuasive for the defense, but they by no means are binding on any future child exploitation cases in the Western District of New York, and those cases are owed a good faith analysis before throwing the baby out with the bathwater.

C. <u>Even if the Court Finds the Information to Support the Warrant Was Stale, the Police Had an Objective and Reasonable Good Faith Belief in the Validity of the Warrant</u>

The defense raises, but does not discuss in detail the good faith prong of the exclusionary rule, or its impact on this case.   *See, e.g., Davis v. United States*, 564 U.S. 229 (2011); *United States v. Leon*, 468 U.S. 897 (1984).   The exclusionary rule is fundamentally inconsistent with

the search for truth and safety of the community. *See Davis,* 564 U.S. at 237. For this reason, it is a "last resort" remedy, to be deployed only in those limited circumstances where "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* Courts may not reflexively exclude evidence obtained in violation of the Fourth Amendment, but must engage in a "rigorous weighing of its costs and deterrence benefits." *Id.* at 238.

The government does not agree that Justice Palumbo was knowingly mislead and therefore violated the Fourth Amendment in issuing the warrant. But even if he was, applying the exclusionary rule would be all cost with no corresponding deterrence benefit, under the circumstances of this case. For these reasons, and consistent with binding Supreme Court precedent, the Court should deny the defense motion to suppress.

Suppression of evidence is a "last resort" not a "first impulse." *See, e.g., United States v. Clark*, 638 F.3d 89, 99 (2nd Cir. 2011) (internal quotes and cites omitted). Thus, even if this Court concludes that the warrant issued by Justice Palumbo was defective, the evidence obtained in reliance on such warrant should not be suppressed because the police relied in good faith upon the warrant. *See United States v. Leon*, 468 U.S.897 (1984). A police officer is not required to "disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Massachusetts v. Sheppard*, 468 U.S. 981, 898-90 (1984).

There are limited exceptions to the good faith rule of *Leon*, but none apply in this case. There is, for instance, no allegation, let alone support for the proposition, that Justice

Palumbo "wholly abandoned his judicial role" in issuing the warrant or that Officer Walsh misled Justice Palumbo in connection with the search warrants. *See, e.g., Leon*, 468 at 923. In fact, Officer Walsh highlighted the fact that staleness could be an issue, and, in fact, four pages (pages 23-26) of the Application for the Search Warrant highlight the issue. If Officer Walsh truly wanted to mislead Justice Palumbo, he could have left out any mention of staleness.

Nor was Officer Walsh's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (internal quotes and cites omitted). For this exception to apply, the Court must conclude that a warrant application was "totally devoid" of factual support. *See, e.g., Clark*, 638 F.3d at 103; *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). That is plainly not the situation here, given the length of the application alone.

In the end, any deterrence benefits of suppression would not outweigh its heavy costs here. *See, Davis*, 546 U.S. at 237. There is no indication that the police acted with deliberate, reckless or grossly negligent disregard for the Fourth Amendment. *Id.* at 238. To the contrary, the record shows that Officer Walsh always tried to do the right thing, and did so by highlighting the staleness issue. Once the issuing court has "ruled on the legal sufficiency of the facts alleged in the affidavit, the officers were justified in executing the warrant." *United States v. Falso*, 544 F.3d 110, 128 (2nd Cir. 2008). For these reasons, the defense motion should be denied.

**POINT II:     DISCOVERY UNDER RULE 16 AND RULE 12**

The defendant also seeks general discovery by citing Rule 16 of the Federal Rules of Criminal Procedure.   Since the date of the indictment, the United States has complied, and intends to continue to comply, with the requirements of Rule 16.   To that end, the United States has provided comprehensive voluntary discovery.   The previous Assistant United States Attorney on the case sent a letter to defense counsel making the Massachusetts victim's Child Advocacy Center interview available at the United States Attorney's Office.   The United States Attorney's Office made a CD of the suspected child pornography images available to the defense's expert, Mr. Jerry Grant, to view on October 30, 2019. Additionally, a replication of the defendant's hard drive containing all forensic evidence was made available to the defense and defense expert on November 5, 2019.   The defense made a request for the Homeland Security Agent's work product, which we denied at this stage of the proceedings, and instead gave Mr. Grant all of the raw data associated with the forensics in this case.

As the government identifies any other evidence which falls within the scope of Rule 16, it will provide such evidence to defendants and their counsel.   The government will continue to comply with its continuing duties to disclose set forth in Rule 16(c).   The government herein notifies the defendant that it intends to introduce all of this evidence at trial pursuant to Rule 12(b)(4).

The defendant also moves for disclosure of the statements of prosecution witnesses pursuant to Title 18, United States Code, Section 3500 (Jencks Act).   The United States will comply in this case with our practice and the trial court's practice to disclose witness

statements before trial.   That practice should be followed because the defendant has failed to make any showing of good cause for the extraordinary, expedited relief that they seek.

The <u>Jencks</u> Act requires the government to produce any prior statements of a witness that relate to the subject matter of the witness's testimony and that are in the government's possession, <u>after</u> the direct examination of the witness.   18 U.S.C. Section 3500.   Because the <u>Jencks</u> Act provides the exclusive procedure for discovering statements a government witness has given to law enforcement agents, <u>United States v. Covello</u>, 410 F.2d 536, 543 (2d Cir. 1969), even the trial court lacks statutory authority to order early disclosure.   <u>In re United States</u>, 834 F.2d 283, 286-287 (2d Cir. 1987); <u>United States v. Percevault</u>, 490 F.2d 126 (2d Cir. 1974).   Nonetheless, the United States agrees to provide witness statements required by 18 U.S.C. Section 3500 at the time set by the trial court pursuant to its usual practice.   However, the government reserves the right to withhold witness statements until a witness has completed direct testimony where production of the witness' statement prior to trial would expose the witness to retaliation or danger to the witness or the witness's family.

**POINT III:   *BRADY, GIGLIO* AND IMPEACHMENT MATERIAL**

Defendant moves for immediate disclosure of <u>Brady</u> [1] and <u>Giglio</u>, [2] exculpatory information.   The United States believes it is complying with its obligations to provide this

---

[1]   <u>Brady v. Maryland</u>, 373 U.S. 83 (1986).

[2]   <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

potentially exculpatory information to defendants.   At this time, the government is unaware of any <u>Brady</u> material related specifically to this defendant.

The defendant seems to overlook that <u>Brady</u> and its progeny do not provide a right to discover each and every piece of information that might be of theoretical or conceivable use to a defendant preparing for trial, however.   <u>See</u> <u>e.g.</u>, <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559-660 (1977).   Information is not exculpatory just because it is not affirmatively incriminating.   <u>United States v. Scarpa</u>, 913 F.2d 993, 1010-11 (2d Cir. 1990).   A defendant is not entitled to disclosure of work product or other privileged documents or information of the sort he requests, Fed. R. Crim. P. 16(a)(2), is not entitled to a list of witnesses at this stage of the case, <u>United States v. Bejasa</u>, 904 F.2d 137-39 (2d Cir. 1990), and is not entitled to all information which might conceivably reveal something to impeach a witness.

Neither is the defendant entitled to expedited disclosure of <u>Brady</u> and witness impeachment materials.   <u>See</u> <u>United States v. Coppa</u>, 267 F.3d 132, 144 (2d Cir. 2001); <u>United States v. Feldman</u>, 731 F. Supp. 1189, 1200-01 (S.D.N.Y. 1990) (government agreement to provide <u>Brady</u> impeachment material along with <u>Jencks</u>[3] Act material for each witness is sufficient); <u>United States v. Wilson</u>, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983) (government need not produce material regarding impeachment of witnesses before trial). As a practice, the government seeks to disclose directly exculpatory information as soon as the government becomes aware of it, and the government believes that it is complying with

---

[3]   <u>United States v. Jencks</u>, 357 U.S. 657 (1957).

its obligations to disclose exculpatory material so that the defendants will have the time before trial to make effective use of the material.   To the extent that additional <u>Brady</u> and impeachment material becomes known to the government, such information will be disclosed sufficiently in advance of the proof during trial for the information to be effectively useful to the defendant.

**POINT IV:   <u>DISCOVERY PURSUANT TO 404(b), 608 AND 609</u>**

Regarding disclosure pursuant to Federal Rules of Evidence 404(b), 608 and 609, the defendant is in possession of his criminal history, and is fully aware of his past criminal conduct.   As a result, the defendant is aware of that which may fall within the ambit of Fed. R. Evid. 608(d) and 609.

Rule 404(b) of the Federal Rules of Evidence requires the government to provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that the government intends to use at trial.   No set timetable for notice is required, however, as evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial.   <u>United States v. Aguirre-Parra</u>, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991).   The reasonableness of Rule 404(b) notice is determined by the particular circumstances of the case.   <u>United States v. Falkowitz</u>, 214 F. Supp. 2d 365, 393 (S.D.N.Y. 2002) (permitting disclosure of Rule 404(b) evidence two weeks before trial).

In this case, defendant has not advanced any concrete reason for early disclosure of Rule 404(b) evidence and, therefore, this request should be denied, without prejudice. Falkowitz, 214 F. Supp. 2d at 393).   The government will disclose evidence in its possession which might fall within the ambit of Fed. R. Evid. 404(b), 607, 608 and 609, and to provide notice of its intention to rely upon such evidence at the time it is ordered to do so by the trial court.   With respect to the disclosure of evidence which falls within the ambit of Fed. R. Evid. 608, the government notes that it has no obligation to provide a defendant with any information that could be used to impeach him pursuant to Rule 608, should he elect to testify. See United States v. Livoti, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998); see also United States v. Song, 95-CR-129, 1995 WL 736872 *7 (S.D.N.Y. 1995) ("Rule 608 and 609 do not require the government to produce notice of impeachment evidence."); United States v. Comere, 1996 WL 492704 *2 (N.D.N.Y. 1996) (it is premature to disclose impeachment evidence until witnesses testify.).

Furthermore, the government preliminarily notifies the defendants that it intends to introduce at trial, pursuant to Rule 404(b), all prior criminal conduct acts or wrongs for the purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident.   This notice is only preliminary in nature and is not intended to foreclose the government from relying on other Rule 404(b) evidence should it deem the introduction of such evidence appropriate at the time of trial. The government will provide the defendants with more definitive notice of its intent to rely on 404(b) evidence when directed by the trial judge, or during trial if the trial judge excuses pretrial notice on good cause shown.   In accordance with usual administrative practices of

the trial court, issues relating to the admissibility and use of such evidence should be resolved by the trial judge at the time of pretrial conferences in this case.

**POINT V:   MOTION FOR LEAVE TO MAKE OTHER MOTIONS**

The defendant has further moved for leave to make further and additional motions. The defendant will be able to raise legal issues before trial to the extent the issues are not stale under Rule 12(b).   However, the defendants ask for blanket, open-ended permission to make any additional motion they may later choose to make whenever they chooses to make it. As it stands, the defendant has already made numerous motions, each with multiple sub-categories, in this omnibus motion.   The Court should deny the motion, without prejudice. See Fed. R. Crim. P. 12(b).   The law does not permit a defendant to hold in reserve any argument he or she chooses, for whatever reason he or she chooses, until a time that he or she chooses.

To the extent that a defendant later establishes good cause, the United States will not oppose a request for the additional motion, if there is merit to the motion.   Nevertheless, the Court should not excuse the defendant, in advance, of the requirement that they show good cause for making subsequent pretrial motions.

**GOVERNMENT'S REQUEST FOR RECIPROCAL DISCOVERY**

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal discovery.   Specifically, the government requests that it be allowed to inspect and copy books, papers, documents, photographs, tangible objects, or copies of

portions thereof which are within the possession, custody or control of the defendant in which the defendant intends to introduce as evidence-in-chief at the trial.   Additionally, the government requests to inspect and copy any results or reports of physical or mental examinations and/or of scientific tests or experiments made in connection with this case within the possession or control of the defendant which the defendant intends to introduce as evidence-in-chief at the trial or which was prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony.   As of this date, defendant has not provided any reciprocal discovery to the government.

Pursuant to Fed. R. Evid. 807, the government also requests advance disclosure of any statement(s) the defendant proposes to utilize at a trial of this matter.

In the absence of any opposition by the defendant, it is respectfully requested that the relief sought, consistent with Fed. Rule of Crim. P. 16 and Fed. Rules of Evid. 807 be granted.

The government specifically reserves its right to file any necessary Memorandums of Law with respect to any factual or legal issues developed during argument on the instant motions and to respond to any motions or requests to which the defendant has requested leave to file or reserved.

## **CONCLUSION**

For all of the foregoing reasons, the defendant's motions should be denied in their entirety.

DATED:   Buffalo, New York, February 7, 2020.

JAMES P. KENNEDY, JR.
Acting United States Attorney

BY:   s/ MEGHAN A. TOKASH
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5860
Meghan.Tokash@usdoj.gov