UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                         Plaintiff,

 v.

                                                          19-CR-103 JLS

SHANE GUAY,

                         Defendant.

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. John L. Sinatra,

Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and

report upon dispositive motions.

## PRELIMINARY STATEMENT

        The defendant, Shane Guay ("the defendant"), is charged in a multi-count

indictment with having violated Title 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A),

2252A(a)(5)(B) and 2422(b) along with a forfeiture allegation.   Dkt. #8.   He has filed a

motion wherein he seeks suppression of the use of physical evidence seized from his

residence pursuant to a New York State search warrant and suppression of the use of

statements made by him to law enforcement personnel.   Dkt. #31.   The government

has filed its opposition to the defendant's motion.   Dkt. #32.   Oral argument on the

motion was heard by this Court on February 12, 2020 and the matter was thereafter taken under advisement.

## FACTS[1]

Sometime between November 9, 2016 and April 30, 2017, an investigation was conducted by Detective Olivia Siekman of the Shirley, Massachusetts Police Department, as well as by members of the Aspen, Massachusetts Police Department, regarding the transmission of text messages and images of a pornographic nature to multiple juvenile students, which allegedly occurred on November 6, 7 and 8, 2016, and it was determined that these were sent by someone using certain designated Facebook and Instagram accounts.   It was further determined that the aforesaid Facebook accounts were registered to a Shane Guay who lived in Olean, New York.   As a result, Detective Siekman forwarded the investigation case materials to Investigator John Lombardi of the New York State Police ("NYSP") which Investigator Lombardi received and reviewed on May 1, 2017.   On May 1, 2017, Investigator Lombardi located a Facebook profile for "Shane Guay" which contained numerous photos ("selfies") of a male believed to be the defendant herein, and on May 1, 2017 this belief was validated by Investigator Lombardi by checking the New York State Department of Motor Vehicles' records relating to Shane Guay of 147 North 8th Street, Olean, New York.   On September 5, 2017, in response to a subpoena, Verizon Wireless reported the

---

[1] The facts are taken from the motion papers of the defendant and the government's response to same as well as the facts set forth in the Application of David J. Walsh, an Investigator with the New York State Police, dated May 31, 2018.   (Defendant's Exhibit B attached to Dkt. #31).

telephone number that was utilized in the transmission of the aforesaid pornographic texts and images in November of 2016.   This telephone number was associated with the Facebook profile of Shane Guay.

For reasons unknown to this Court, it appears that nothing of substance was further conducted in the NYSP investigation until March 29, 2018 when Investigator Lombardi conducted another Facebook search for the specific cell phone number previously reviewed by him and determined that this cell phone number was still associated with the Facebook profile of Shane Guay.   Thereafter, in April of 2018, Investigator Lombardi and Investigator Daniel Walsh of the NYSP, who was working in "consultation" with Investigator Lombardi, conducted a review of the Facebook and Instragram accounts associated with the transmission of texts and images to juvenile victims as well as a review of Verizon records and determined that Shane Guay was the transmitter of same.   As a result, they concluded that Shane Guay, who resided at 147 North 8th Street, Olean, New York, would be in possession of "evidence relevant to the investigation and/or bearing evidence of violations of New York Penal Law sections 263.05, 263.15, 263.16, 235.21(3) and 260.10(1)" either on his "person and/or at the residence at 147 North 8th Street, Olean, New York."

Investigator Daniel Walsh submitted a sworn Application for Search Warrant setting forth the aforesaid details of the investigation in this matter to the Hon. Daniel Palumbo, Olean City Court Judge, on May 31, 2018, and in response to same,

Judge Palumbo issued the search warrant for the search of the residence at 147 North 8th Street, Olean, New York and the seizure of computers, cell phones and other electronic devices as well as documents and records.   A search was then conducted at 147 North 8th Street, Olean, New York pursuant to that search warrant on June 5, 2018 and a number of electronic devices were seized from this residence.   During the search of the residence on June 5, 2018, Investigator Walsh and Special Agent Gamble of the Department of Homeland Security ("HSI") "conducted a non-custodial interview with the defendant and thereafter continued the interrogation of the defendant at the NYSP barracks in Olean, New York.   During these interviews, the defendant allegedly admitted that he had "inappropriate conversations with underage females on Instagram" but that he did not "personally remember it."   He also admitted that he did "things that [he] shouldn't have."   He also allegedly admitted to knowingly sending pictures of his penis to minor females as well as soliciting nude images of minor females in return.

## DISCUSSION AND ANALYSIS

The defendant has filed a motion seeking the suppression of all of the physical evidence seized from his residence on June 5, 2018 pursuant to the search warrant issued by Judge Palumbo on May 31, 2018 as well as statements made by him during the interviews conducted by Investigator Walsh and Special Agent Gamble on the basis that the search warrant of May 31, 2018 was invalid since the issue of probable cause was based on "stale" information.   He further argues that the

4

government cannot rely on the "good faith doctrine" established in *United States v. Leon*, 468 U.S. 897 (1984) because Investigator Walsh "misled" Judge Palumbo in that he "omitted all of the many cases – including precedential caselaw from the Second Circuit – finding that the passage of as little as 9 months rendered information sale." Dkt. #31, p. 9.

Lastly, the defendant argues that since the search warrant was invalid, the search conducted on June 5, 2018 at his residence was in violation of his Fourth Amendment rights and thus the interviews of him during that search and at the NYSP barracks constituted "fruit of a poisonous tree" and therefore, the statements made by him during that search/interview must be suppressed.   Dkt. #31, p. 5.

## A.  The Fourth Amendment and the Exclusionary Rule

Although the search warrant issued on May 31, 2018 by City Court Judge Palumbo is a New York State warrant, it is being employed in a federal prosecution. As a result, the determination of the legal validity of that search warrant is governed solely by the requirements of the Fourth Amendment to the United States Constitution. *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993).   The question of whether the evidence seized by state officers was obtained by an unreasonable search and seizure is to be determined as if the search and seizure had been made by federal officers. *Preston v. United States*, 376 U.S. 364 (1964).

5

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and affects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized.

The decision to issue a search warrant requires answering the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). This Amendment protects "against unreasonable searches and seizures" but "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans*, 514 U.S. 1, 10 (1995). Caselaw has been established that suppression of evidence is not an automatic consequence of a Fourth Amendment violation. Instead, it must be determined whether there has been police culpability and the potential of exclusion to deter future wrongful conduct. *Herring v. United States*, 555 U.S, 135, 137 (2009); *Illinois v. Gates, supra* at 223; *see, e.g., Weeks v. United States*, 232 U.S. 383, 398 (1914); *United States v. Calandra*, 414 U.S. 338, 348 (1974). In that context, the Supreme Court has held that "the exclusionary rule is not an individual right and applies only where 'it results in appreciable deterrence'." *Leon v. United States*, 468 U.S. 897, 909 (1984); *United States v. Janis*, 428 U.S. 433, 454 (1976); *Herring v. United States, supra* at 141. As the Court said in

6

*Herring*:

> To trigger the exclusionary rule, police conduct must be
> sufficiently deliberate that exclusion can meaningfully deter
> it, and sufficiently culpable that such deterrence is worth the
> price paid by the justice system.   As laid out in our cases,
> the exclusionary rule serves to deter deliberate, reckless, or
> grossly negligent conduct, or in some circumstances
> recurring or systemic negligence.

*Id.* at 144.

The exclusionary rule is applied to evidence obtained directly and indirectly

from an unlawful search and seizure.   *Wong Sun v. United States*, 371 U.S. 471, 484-85

(1963).   Suppression is not required where the connection between the illegal conduct

of the police and the discovered evidence has "become so attenuated as to dissipate the

taint."   *Nardone v. United States*, 308 U.S. 338, 341 (1939).   The government bears the

burden of showing that a statement is sufficiently attenuated from an officer's unlawful

conduct.   *Brown v. Illinois*, 422 U.S. 590, 603 (1975).

## B. Validity of the Search Warrant – The Staleness Issue

In resolving an issue of "staleness" in the context of establishing legal

probable cause for the issuance of a search warrant, the Court of Appeals for the

Second Circuit has provided the following guidance:

7

In determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, *i.e.*, true at the time of the application, or whether instead it has become stale.

[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.

*United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981), *cert. denied*, 458 U.S. 1110, 73 L.Ed. 1373, 102 S.Ct. 3493 (1982).   In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale. See, e.g., id. (22 days); United States v. Fama, 758 F.2d 834, 838 (2d Cir.1985) (5 weeks); United States v. Rowell, 903 F.2d 899, 903 (2d Cir.1990) (18 months).

*Rivera v. United States,* 928 F.2d 592, 602 (2d Cir. 1991).

Because all of the arguments raised in the government's response to the defendant's motion, as well as that information that was presented by Investigator Walsh in his Application submitted to Judge Palumbo, are so clearly addressed in the Second Circuit Court of Appeals decision in *United States v. Raymondo,* 780 F.3d 105 (2d Cir.), *cert. denied* 137 S. Ct. 433 (2015), I have deliberately sacrificed brevity by setting forth that Court's analysis at length wherein the Court stated:

In particular, we may conclude that a warrant lacks probable cause where the evidence supporting it is not "sufficiently

8

close in time to the issuance of the warrant" that "probable cause can be said to exist *as of the time of the search* "— that is, where the facts supporting criminal activity have grown stale by the time that the warrant issues. *Wagner,* 989 F.2d at 75 (emphasis added). The law recognizes "no bright-line rule for staleness," *Walczyk v. Rio,* 496 F.3d 139, 162 (2d Cir.2007), which must instead be evaluated "on the basis of the facts of each case,"   *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981). The two critical factors in determining staleness are the age of the facts alleged and the "nature of the conduct alleged to have violated the law." *United States v. Ortiz,* 143 F.3d 728, 732 (2d Cir.1998) (internal quotation marks omitted). Where the affidavit "establishes a pattern of continuing criminal activity," such that "there is reason to believe that the cited activity was probably not a one-time occurrence," the passage of time between the last alleged event and the warrant application is less significant. *Wagner,* 989 F.2d at 75.

We have recognized that the determination of staleness in investigations involving child pornography is "unique." *United States v. Irving,* 452 F.3d 110, 125 (2d Cir.2006). Because "it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes," evidence that such persons possessed child pornography in the past supports a reasonable inference that they retain those images—or have obtained new ones—in the present. *Id.* (internal quotation marks omitted); *see also United States v. Vosburgh,* 602 F.3d 512, 528 (3d Cir.2010) ("[P]ersons with an interest in child pornography tend to hoard their materials and retain them for a long time."); *United States v. Gourde,* 440 F.3d 1065, 1072 (9th Cir.2006) ("Collectors act like pack rats ... [,] rarely, if ever, dispos[ing] of their sexually explicit materials.") (internal quotation marks omitted). Crucially, however, the value of that inference in any given case depends on the preliminary finding that the suspect is a person "interested in" images of child pornography. The "alleged 'proclivities' of collectors of child pornography," that is, "are only relevant if there is probable cause to believe that [a given defendant] *is* such a collector." *United States v. Coreas,* 419 F.3d 151, 156 (2d Cir.2005) (emphasis added).

9

Federal courts including this one have historically inferred that a suspect is a "collector" of child pornography, likely to hoard illicit images, based on a number of factors. They have done so given a suspect's admission or other evidence identifying him as a "pedophile." *See, e.g., Irving,* 452 F.3d at 125 (finding no staleness where suspect "admitted he was a convicted pedophile," *id.* at 115); *United States v. Harvey,* 2 F.3d 1318, 1323 (3d Cir.1993) (finding no staleness where affidavit "provided ample information that [suspect] was a pedophile"). They have done so in light of information that the suspect paid for access to child pornography. *See, e.g., United States v. Frechette,* 583 F.3d 374, 379 (6th Cir.2009) (finding no staleness where suspect purchased $79.95 website subscription); *Gourde,* 440 F.3d at 1072 (finding that suspect "fit the collector profile because he joined a paid subscription website dedicated to child pornography"); *United States v. Payne,* 519 F.Supp.2d 466, 477–78 (D.N.J.2007), *aff'd,* 394 Fed.Appx. 891 (3d Cir.2010) (finding no staleness where suspect purchased "paid subscription"). And they have done so where the suspect had an extended history of possessing or receiving pornographic images. *See, e.g.,* \*115 *United States v. Pappas,* 592 F.3d 799, 802–03 (7th Cir.2010) (finding no staleness where suspect received eleven pornographic mailings over two months); *United States v. Allen,* 625 F.3d 830, 842–43 (5th Cir.2010) (finding no staleness where suspect had history of trading child pornography); *United States v. Cox,* 190 F.Supp.2d 330, 334 (N.D.N.Y.2002) (finding no staleness where suspect "received numerous images of child erotica and child pornography over an almost three-year period")

\*     \*     \*

By contrast, to establish probable cause in this case, where the agents applied for a warrant on the basis of nine-month-old evidence, it was not enough simply to show that the suspect had at some point accessed thumbnails of child pornography. It was necessary to show that he accessed them in circumstances sufficiently deliberate or willful to

suggest that he was an intentional "collector" of child pornography, likely to hoard those images—or acquire new ones—long after any automatic traces of that initial incident had cleared. No such propensity-raising circumstances are present in the record.

\* \* \*

[A]bsent any indicia that the suspect was a collector of child pornography likely to hoard pornographic files, we hold that a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary traces of that incident have likely cleared. We thus conclude that the warrant issued in this case was not supported by probable cause.

*Id*. at 114-115, 116-117.

The statements of Investigator Walsh in his Application for the search warrant that "the ability of forensic examiners to recover files from a computer, even those deleted by a user, impacts a court's staleness analysis, since evidence on a computer is recoverable months or years after it has been downloaded, deleted or viewed and the age of the information supporting a warrant is increasingly irrelevant when the object searched is stored on a computer" because "the long memory of computer hard drives, the evidence of a crime is still likely stored on a computer's hard drive, even after a perpetrator tires to delete it, was not sufficient to establish probable cause for the issuance of the search warrant in question." (Application of Daniel Walsh,

sworn to May 31, 2018, p. 26, ¶ K).    Dkt. #31-1.    As Judge Arcara ruled in *United States v. Coon*, WL 1871165 (WDNY 2011):

> However, the ability to recover deleted computer files does not, without more, support probable cause to search a residence. There also must be probable cause to believe that the computer will be located at the residence at the time of the search. Ordinarily, where the time between the downloading of the pornography and the search of the residence is relatively brief, it is easy to infer that the computer is still at the location where the pornography was downloaded. The shorter the time between those two events, the stronger the inference. Conversely, as more time passes between the initial download and the search of the residence, the more attenuated probable cause becomes.

*See also United States v. Ohlson*, 2012 WL 913037 (WDNY 2012).

In applying the guidance set forth in *Raymondo*, I find that the sending of texts and images of a pornographic nature to multiple juvenile students on three separate days, *i.e.*, November 6, 7 and 8, 2016, by the defendant were isolated instances and were insufficient to establish probable cause on May 31, 2018, some eighteen months later, that evidence of child pornography would be found in the residence of the defendant at 147 North 8th Street, Olean, New York because that information was "stale" as a matter of law.    The May 31, 2018 sworn Application of Investigator Walsh fails to establish that:

1. the defendant was an admitted pedophile;

2. the defendant "paid for access to child pornography;

3. the defendant "purchased a website subscription dedicated to child pornography;

4. the defendant "had an extensive history of possessing or receiving pornographic images;"

5. the defendant "received numerous images of child pornography over an "extended period of time or as part of "continuous activity;"

6. the defendant was "an intentional 'collector' of child pornography" and "likely to hoard" images of child pornography "or acquire new ones – long after any automatic traces of" the images and texts of November 6, 7 and 8, 2018.

In total, the Application for the search warrant dated May 31, 2018 failed to establish "propensity-raising circumstances" that the defendant was an intentional collector of child pornography or involved in child pornography on a "continuous" basis. *Raymondo, Id.*

The transmissions of November 6, 7 and 8, 2018 do not by themselves "create a fair probability that child pornography" would still be found in the residence of the defendant or on his electronic devices some eighteen months later.   As a result, the search warrant issued by Judge Palumbo on May 31, 2018 was not supported by probable cause and therefore did not comport with the requirements of the Fourth

Amendment to the United States Constitution.   It is therefore recommended that the defendant's motion to suppress the use of the physical evidence seized from his residence on June 6, 2018 be granted.

## C. The Statements of the Defendant

The defendant seeks to suppress the "oral evidence obtained from him as a result of the June 6, 2019 search warrant" because the defendant "was also interrogated after the search and those statements must be suppressed."   Dkt. #31, p. 3.   However, he does not state what statements he allegedly made to police that should be suppressed.   The government states that the interrogation of the defendant occurred "during the search warrant execution" and that "Investigator Daniel Walsh and HSI Special Agent Katherine Gamble conducted a non-custodial interview with the defendant at the NYSP barracks in Olean, New York."   Allegedly, the defendant made certain statements regarding the transmission of texts and images of minor females exposing their breasts and vaginas (between the ages of 14 and 16) via Instagram in the November/December 2017 time frame."   He also allegedly admitted that "he last exchanged nude images with minor females in the December 2017/January 2018 time frame and told agents that he knew that it was wrong to exchange nude images with minor females and that "he was the user of the" accounts and "the e-mal address associated with these accounts" by which the transmissions were made and received. Dkt. #32, p. 3.

14

The issue in the defendant's motion to suppress his alleged statements is not a *Miranda* issue.[2]   Rather, it is an issue that must be resolved in the context of the "fruit of the poisonous tree" doctrine as discussed in the landmark case of *Wong Sun v. United States*, 371 U.S. 471 (1963) wherein the Supreme Court stated:

> In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. Mr. Justice Holmes, speaking for the Court in that case, in holding that the Government might not make use of information obtained during an unlawful search to subpoena from the victims the very documents illegally viewed, expressed succinctly the policy of the broad exclusionary rule:
> 'The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed.' 251 U.S. at 392, 40 S.Ct. at 183. The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.'

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> Similarly, testimony as to matters observed during an
> unlawful invasion has been excluded in order to enforce the
> basic constitutional policies. McGinnis v. United States, 1
> Cir., 227 F.2d 598.

*Id.* at 484-485.   *See also United States v. Bershchansky*, 788 F.3d 102, 112 (2d.Cir.

2015).


Since the exclusionary rule is applied to evidence obtained directly and

indirectly from an unlawful search and seizure, the defendant does have a legal basis

for seeking suppression of his alleged statements made to Investigator Walsh and

Special Agent Gamble "during the search warrant execution" and the non-custodial

interview of the defendant at the NYSP barracks in Olean, New York" on June 6, 2019.

In its responding papers, the government has admitted that some interrogation of the

defendant was conducted by Investigator Walsh and Special Agent Gamble "during the

search warrant execution."   Dkt. #32, p. 3.   Since I have concluded that the search

warrant was invalid for the aforesaid reasons, the search of the defendant's residence

was in violation of the defendant's Fourth Amendment rights.   The interrogation of the

defendant was certainly an indirect result, if not a direct result, of the illegal entry into his

residence, and as such, the results of that interrogation, *i.e.*, the statements of the

defendant, are subject to suppression.   *Wong Sun , supra.*   However, there still

remains the question of whether the statements of the defendant allegedly obtained

from the defendant while he was interrogated at the NYSP barracks in Olean, New York

should also be suppressed in accordance with the exclusionary rule.   The parties have

failed to provide this Court with a timeline as to when the interrogation of the defendant began "during the execution of the search warrant" and how long that interrogation lasted in an uninterrupted form.   Secondly, the Court has not been made aware of how much time elapsed between the interrogation of the defendant at his residence and when he was subsequently interrogated at the NYSP barracks in Olean, New York. Also, the government has not presented anything, as is its burden, to establish facts that would be sufficient for this Court to rule that the statements made by the defendant while at the NYSP barracks were sufficiently attenuated from the illegal search and seizure conducted at his residence.   *See Brown v. Illinois*, 422 U.S. 590, 603 (1975). As a result, it is reasonable to conclude that the statements made by the defendant in response to law enforcement interrogation at this residence and at the NYSP barracks in Olean, New York were the indirect result, if not direct result, of the illegal entry into his residence and the illegal search of that residence without any attenuation having occurred.   Therefore, it is recommended that the statements or admissions made by the defendant as a result of the execution of the invalid search warrant be considered "fruits of the poisonous tree" and therefore not admissible against him as evidence at trial and his motion to suppress such evidence be granted.

## D. The Good Faith Doctrine Under *Leon* Is Not Applicable

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that even though a search warrant is deemed to have lacked probable cause for its issuance, the exclusionary rule does not require the suppression of evidence seized

pursuant to that warrant so long as law enforcement officers were acting in good faith in executing that warrant.   *See also United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008); *United States v. Cancelmo*, 64 F.3d 804, 807-08 (2d Cir. 1995).   However, as the Second Circuit Court of Appeals has stated:

> It bears emphasis, however, that the good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all the known facts.   Good faith is not a blanket excuse for any police behavior.   A warrant is not a general hunting license, nor is it a mantle of omnipotence, which cloaks its holders in the King's power to "do no wrong."   And perhaps most important, it is not an excuse if the police are not frank with the magistrate in proceedings to obtain the warrant – proceedings that are typically *ex parte*.   *See Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978).

*United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996).

It has become axiomatic that when law enforcement agents "exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis v. United States*, 564 U.S. 229, 238 (2001); *Herring, supra* at 145; *United States v. Raymondo, supra* at 117-118; *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013).   When law enforcement officers knowingly mislead a judge in seeking the issuance of a search warrant, the good faith doctrine under *Leon* is inapplicable and suppression of evidence is an appropriate remedy.   *Leon, supra* at 923; *Davis, supra* at 237; *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011); *Stokes, supra* at 443.

In the case at bar, I find that Investigator Walsh knowingly "mislead" Judge Palumbo in seeking a search warrant for the defendant's residence and the seizure of evidence in that residence.   This misleading by Investigator Walsh is clearly established in his sworn Application of May 31, 2018 by reason of the fact that he was aware of and concerned with the issue of "staleness" wherein he stated:   "I further acknowledge that the temporal proximity of this application and the evidence supporting probable cause may arouse the issue of staleness."   (Application for Search Warrant, p. 23, ¶ 1).   Dkt. #31-1.   In his efforts to convince Judge Palumbo that "staleness" was not a prohibiting factor preventing a finding of probable cause for the issuance of the search warrant, he cites the holdings of cases decided by the Eight and Ninth Circuit Courts of Appeals as well as United States District Courts in New Hampshire and Maryland and a New York State Appellate Division, Second Department decision. (Application for Search Warrant, pp. 24-26, ¶s (e), (f), (g), (h), (i), (j)).   Dkt. #31-1. Admittedly, he did cite two United States District Court cases, one from the Southern District of New York and the other from the Northern District of New York.   However, a reading of those decisions clearly establishes that the facts and circumstances in each case were distinguishable from the facts in this case in that both cases involved a "hoarder" and/or "collector" of child pornography, whereas, the defendant herein, has not been shown to be either of those.

19

The most damning evidence of misleading is the fact that Investigator Walsh knowingly failed to advise Judge Palumbo of the contrary decisions of the Second Circuit Court of Appeals on the issue of "staleness" and the two decisions of the Hon. Richard J. Arcara, all of which were a matter of record prior to May 31, 2018 and easily retrievable on Westlaw.   *See Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991); *United States v. Raymondo*, 780 F.3d 105 (2d Cir.), *cert. denied* 137 S.Ct. 433 (2015) and the cases cited therein; *United States v. Coon*, 2011 WL 1871165 (WDNY 2011); *United States v. Ohlson*, 2012 WL 913037 (WDNY 2012).

His citing of Eight and Ninth Circuit cases in support of his warrant application was of no legal value to Judge Palumbo in making his decision as to whether probable cause existed for the issuance of the search warrant and does not provide a sound legal basis for applying the "good faith doctrine" under *Leon*.   In order for law enforcement officers to rely on judicial precedent in claiming the "good faith exception" under *Leon*, that judicial precedent must be "binding" and the Second Circuit Court of Appeals has interpreted "binding" precedent as being decisions of the United States Supreme Court or the Second Circuit Court of Appeals and it does not consider the decisions of other circuits to be "binding."   *United States v. Aguiar*, 737 F.3d 251, 260-261 (2d Cir. 2013), *cert. denied* 574 U.S. 959 (2014); *see also S.E.C. v. Dorozhko*, 574 F.3d 42, 46 (2d Cir. 2009).

20

The deliberate omission of the Second Circuit Court of Appeals decisions and the decisions of Judge Arcara deprived Judge Palumbo of a complete understanding of the law on "staleness" in determining whether probable cause existed for the issuance of the search warrant for defendant's residence.   This deliberate omission constitutes a knowing misleading of the judge on this very crucial issue involving the defendant's Fourth Amendment rights.   It is certainly reasonable to conclude that had Judge Palumbo been made aware of this Second Circuit caselaw, he would have ignored those cases cited by Investigator Walsh and not issue the search warrant based on the issue of staleness.

It is also pointed out that the government has acknowledged in its response to the defendant's motion to suppress that Investigator Walsh had pertinent information relating to the issue of "staleness" that he did not include in his Application for the Search Warrant.   More specifically, the government states the following:

> On April 17, 2018, an Investigator in Georgia sent the defendant an e-mail requesting to speak with him about the matter and the defendant responded, via e-mail, "I was going through rough times and was saying things that were stupid. It was a massive mistake and I regret it." In June of 2018, HSI received information from the New York State Police (NYSP) that the defendant was also engaging in sexual chats—including sending images of his penis—with approximately fifteen females in the sixth grade attending the Ayer/Shirley Middle School in Massachusetts. Based on this information on June 5, 2018, the NYSP and HSI executed a search warrant at the defendant's residence in Olean, New York.

21

Dkt. #32, p. 2.

However, an important part of the defendant's response to the Georgia investigator has been left out of the aforementioned quote as it relates to the issue of "staleness."   This is made evident by the e-mail response of the defendant to the Georgia investigator which appears in Exhibit C attached to his motion to suppress, Dkt. #31-1, p. 36, wherein he begins by stating:

> I have deleted everything social media wise.
> Anything that has happened is over with.

This responsive statement of the defendant would certainly be relevant to the question of whether the defendant had any evidence of child pornography on his devices on May 31, 2018 and whether he could validly be described as a "collector" or "hoarder" of child pornography.   In any event, it is information that should have been made known by Investigator Walsh in his Application to Judge Palumbo.   I deem that failure to be a deliberate act as part of the misleading of Judge Palumbo by Investigator Walsh.

The language of the Second Circuit Court of Appeals in its decision in *United States v. Bershchansky* is quite apropos to the conduct of Investigator Walsh in applying for the search warrant by substituting Investigator Walsh's name for that of Special Agent Raab wherein the court stated:

22

> We underscore that Raab was the agent who prepared the warrant.   Because Raab was also the effectuating officer, he cannot now claim that he reasonably relied on the deficient warrant he submitted.   *See Groh,* 540 U.S. at 564, 124 S.Ct. 1284 (2004).   ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid.").

*Id.* at 114.

Therefore, it is recommended that the government's invocation of the "good faith doctrine" be rejected and the exclusionary rule be applied.

## **CONCLUSION**

Based on the foregoing, it is hereby recommended that the defendant's motion to suppress the evidence seized from his residence on June 5, 2018 be granted and further that the use of any statements made by him to law enforcement agents during the execution of the search warrant and in response to police interrogation at the NYSP barracks in Olean, New York on June 5, 2018 be suppressed.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.   *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**   *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

24

the basis for such objection and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:     Buffalo, New York
           April 2, 2020


                                    *S/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

25