IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                   19-CR-103-JLS

SHANE GUAY,

                    Defendant.

## GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The United States of America, through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Meghan A. Tokash, Assistant United States Attorney, of counsel, hereby files its objections to the Magistrate Judge's Report and Recommendation. See Doc. No. 38.

### I.  PRELIMINARY STATEMENT

On May 15, 2019, a federal grand jury returned a twelve-count Indictment against the defendant, which is incorporated by reference. See Doc. No. 8. Counts 7-12 pertain to images found on the defendant's electronic devices which were searched pursuant to the New York State search warrant at issue, which federal agents executed on June 5, 2018. Id.

On June 3, 2019, U.S. Magistrate Judge H. Kenneth Schroeder conducted the arraignment of the defendant and issued a scheduling order for filing motions. See Doc. No. 11.

On January 27, 2020, the defense filed an omnibus motion, which included a motion to suppress the evidence obtained as a result of the execution of the June 5, 2018 New York State search warrants and any statements of the defendant. See Doc. No. 31. The government responded, and the defense replied. See Doc. Nos. 32 and 33. On February 12, 2020, the Court held oral argument and, on April 2, 2020, issued a Report and Recommendation granting the defense motion to suppress evidence seized and statements made by the defendant as a result of the search warrant because the investigator deliberately misled the magistrate. See Doc. No. 38.

In rendering its report, the Court specifically concluded that "The most damning evidence of misleading is the fact that Investigator Walsh *knowingly* failed to advise Judge Palumbo of the contrary decisions of the Second Circuit Court of Appeals on the issue of 'staleness' and the two decisions of the Hon. Richard J. Arcara, all of which were a matter of record prior to May 31, 2018 and easily retrievable on Westlaw. *See Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991); *United States v. Raymondo*, 780 F.3d 105 (2d Cir.), *cert. denied* 137 S.Ct. 433 (2015) and the cases cited therein; *United States v. Coon*, 2011 WL 1871165 (WDNY 2011); *United States v. Ohlson*, 2012 WL 913037 (WDNY 2012)." Id. The Court recommended, "that the defendant's motion to suppress the evidence seized from his residence on June 5, 2018 be granted and further that the use of any statements made by him to law enforcement agents during the execution of the search warrant and in response to police interrogation at the NYSP barracks in Olean, New York on June 5, 2018 be suppressed." Id. The government now files

its objections to Judge Schroeder's Report and Recommendation and asks the Court to reject the Magistrate Judge's recommendation.

## II. ARGUMENT

### A. Standard of Review

The standard of review for objections to a Report and Recommendation is *de novo*. The District Court Judge "may accept, reject, or modify the recommendation, receive further evidence or resubmit the matter to the magistrate judge with instructions." See FED. R. CRIM. P. 59(b)(3).

### B. The Good Faith Exception

Because the Fourth Amendment does not contain any remedy for a violation of what it proscribes, over time, the United States Supreme Court developed a rule that excludes certain illegally-obtained evidence.[1] However, excluding evidence obtained in violation of the Fourth Amendment hindered the traditional truth-finding functions of the courts, and frustrated the judicial system's goal of punishing the guilty. See United States v. Leon, 468 U.S. 897, 907 (1984) ("The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern."); United States v. Payner, 447 U.S. 727, 734 (1980) ("Our cases have consistently recognized that unbending application of the exclusionary sanction ... would impede unacceptably the truth-finding functions of judge and jury."); Stone v. Powell, 428 U.S. 465, 490 (1976) ("The disparity in

---

[1] For a detailed account of the history leading up to the incorporation of the exclusionary rule see generally Potter Stewart, The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases, 83 Colum. L. Rev. 1365 (1983).

3

particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the [exclusionary] rule is contrary to the idea of proportionality that is essential to the concept of justice.").

In <u>Leon</u>, the Supreme Court limited the exclusionary rule's applicability and established the good faith exception. <u>Id.</u> <u>Leon</u> provided a framework for balancing deterrence and social costs to determine whether the exclusionary rule applies.[2] In his well-articulated article, Oklewicz stated:

> To support its conclusion, the Supreme Court first had to weaken the apparent strength of the exclusionary rule as it had been established in <u>Weeks v. United States</u> and <u>Mapp v. Ohio</u>. Justice Byron White, writing for the Court, articulated a new balancing test to determine when the remedy of exclusion applies. The Court explained that exclusion is only appropriate in cases where, after "weighing the costs and benefits of preventing the use . . . of inherently trustworthy tangible evidence," the benefits of exclusion outweigh "[t]he substantial social costs exacted by the exclusionary rule." <u>Leon</u>, 468 U.S. at 907. Justice White concluded that the balancing test strongly implied that the exclusionary rule should be altered to allow for the admission of evidence acquired on a "reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." <u>Id.</u> at 909.
>
> Emphasizing that the exclusionary rule was not an individual constitutional right, the Court explained that the rule applied only when exclusion was capable of deterring future violations of the Fourth Amendment. <u>Id.</u> at 906. Based on this conclusion, the majority highlighted three reasons why evidence obtained in good-faith reliance on a facially valid search warrant should not be suppressed. <u>Id.</u> at 916. First, the purpose of the exclusionary rule was to respond only to the transgressions of police officers in an attempt to dissuade them from committing future breaches of the Fourth Amendment. <u>Id.</u> The exclusionary rule was never designed to punish the mistakes of judicial actors. <u>Id.</u> Second, the Court noted that even if the exclusionary rule was designed to deter judicial actors, it found no evidence to support the proposition that judicial actors were "inclined to ignore or subvert the Fourth Amendment." <u>Id.</u> Finally, Justice White reasoned that there was no basis "for believing that exclusion of evidence seized pursuant to a warrant [would] have a significant

---

[2] For a good account of the framework to determine when the exclusionary applies, see generally, Expanding the Scope of the Good Faith Exception to the Exclusionary Rule by Ross M. Oklewicz, 59 Am. U. L. Rev. 1715.

deterrent effect" on judicial officers. Id. This logic provided the necessary foundation for the Court's ultimate holding that exclusion is an inappropriate remedy when evidence is obtained by a police officer who acts in an objectively good-faith reliance upon a facially valid search warrant that is subsequently deemed invalid. Id. at 919-22.

Although the Court cut back dramatically on the scope of the exclusionary rule, the majority was wary of particular circumstances where exclusion remained an appropriate remedy. Id. at 922. The Court noted that if an affiant misleads the judicial officer issuing the warrant by providing information that the affiant knew or should have known was false, courts could suppress the evidence obtained from the officer's reliance on the defective warrant. Id. at 922. The majority also declined to extend the exception to instances where the judicial officer issuing the warrant "wholly abandoned his judicial role." Id. at 923. In addition, the Court found that exclusion would be a possible when a warrant was based on an affidavit that was so sufficiently bereft of probable cause that no reasonable officer could be justified in relying upon it. Id. Finally, the Court held that the good-faith exception applies only to warrants that are valid on their face. Id. If, for example, the warrant fails to meet the standards of particularization required by the Fourth Amendment, an officer cannot be said to have reasonably relied upon it, thus necessitating exclusion of the evidence obtained through the warrant's issuance. Id.

**C.    The Warrant Did Not Lack Probable Cause Simply Because the Evidence Supporting it is Not "Sufficiently Close in Time to the Issuance of the Warrant" and Investigator Walsh Properly Explained Why this Defendant Was Likely to Have Horded Images Based on Other Evidence Identifying the Defendant as a Pedophile**

Where the affidavit "establishes a pattern of continuing criminal activity," such that "there is reason to believe that the cited activity was probably not a one-time occurrence," the passage of time between the last alleged event and the warrant application is less significant. Wagner, 989 F.2d at 75. In this case, just because there is nearly an eighteen month gap between the November 2016 images sent and received by the defendant, and the June 2018 search warrant, does not mean that the affidavit in support of the search warrant application lacked probable cause. To the contrary, Investigator Walsh laid out a lengthy explaination as to why this defendant was likely a hoarder—in spite of the passage of time.

First, the Magistrate Judge makes reference to Judge Arcara's opinion in Coon, however, this case is primarily a cell phone/mobile application case, not a computer case. At all times during the investigation, the New York State Police were able to show through summonses that the defendant maintained the same cell phone mobile identification number throughout the duration of the case. In other words, the phone that was seized and searched in June 2018, was the same phone that sent and received the images at issue in Counts 1-6 of the Indictment—that is, the phone belonged to the defendant and he alone.

Next, unlike Raymondo, this defendant did not merely access thumbnail images. This defendant sent pictures of his penis to prepubescent females, and solicited them to send him pictures of their sexual organs to him. MV1 sent a photo of her vagina to the defendant in November 2016. At the time that the image was sent, she was twelve years of age. Count one of the Indictment is associated with this event. Specifically, on that date in question, the defendant stated, via Instagram, "Get a pic of your hole and spread it open so I can see." Approximately twelve hours later in the conversation, the defendant stated, "Send pics in the chat and I'll do whatever you want," "Baby", "Hi", "Hi", at which juncture MV1 sent the defendant a photo of her vagina.

The other victim, MV2, sent photos of her vagina to the defendant upon his request in November 2016 as well. Specifically, as to count two of the Indictment, MV2 sent an image of her vagina to the defendant after he sent her a message requesting, "Can I see one of you?" and "Yummy…can you spread your vagina open for me? I wanna pretend to lick it." As for count three of the Indictment, MV2 sent an image of her vagina to the defendant after he sent

her a message requesting, "Spread it open lol," "With your fingers…like the hole," and "Can I see your hole before I show you mine."

This defendant—unlike the defendant in Raymondo—was engaging in sexual chats—including sending images of his penis and requesting pictures of the victim's sexual organs—with approximately fifteen prepubescent females in the sixth grade attending a middle school in Massachusetts. The two critical factors in determining staleness are the age of the facts alleged *and* the "nature of the conduct alleged to have violated the law." United States vs. Ortiz, 143, F.3d 728, 732 (2d Cir. 1998). The nature of this conduct that violated the law, as outlined in Counts 1-6, is different from Raymondo because in this case, the defendant used, persuaded, enticed, and/or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Raymondo was merely accessing archived child sex abuse images of victims he did not personally know. The defendant here got to know his victims, exploited their vulnerable status as children, and persuaded them to send images that he specifically requested. This kind of defendant is specifically the kind who has the propensity to hoard child sexual abuse images.

The Second Circuit recognized that the determination of staleness in investigations involving child pornography is "unique." United States v. Irving, 452 F.3d 110, 125 (2d Cir.2006). Because "it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes," evidence that such persons possessed child pornography in the past supports a reasonable inference that they retain those images—or have obtained new ones—in the present. Id.

7

The Court doesn't need an admission from this defendant that he is a pedophile. In fact, it is rare that pedophiles are willling to self-identify. What the Court has before it is other evidence identifying his as a pedophile, and thus, making it more likley that he was horading images. See United States v. Harvey, 2 f.3d 1318, 1323 (3d Cir. 1993) (finding no staleness where affidavit "provided ample information that [suspect] was a pedophile"). Pedophilia is a psychiatric disorder in which an adult or older adolescent experiences a primary or exclusive sexual attraction to prepubescent children.[3] Although girls typically begin the process of puberty at age 10 or 11, and boys at age 11 or 12, criteria for pedophilia extend the cut-off point for prepubescence to age 13. A person must be at least 16 years old, and at least five years older than the prepubescent child, for the attraction to be diagnosed as pedophilia.[4] Defendant Shane Guay's conduct in Novmber makes it clear he is a pedophile. He is sexually attracted to 12 and 13 year old girls and demonstrated that in his solicitation and enticement of almost 15 middle school age children in a Massachusettes middle school in November 2016.

There is no evidence that pedophilia can be cured.[5] So when in June of 2018, HSI received information from the New York State Police ("NYSP") that the defendant had engaged in sexual chat—including sending images of his penis—with approximately fifteen females in the sixth grade attending the Ayer/Shirley middle school in Massachusetts, coupled with information from the state of Georgia that the defendant was also soliciting pictures of young girls sex organs, Investigator Walsh made an application to Judge Palumbo

---

[3] See Criminological and Forensic Psychology, SAGE Publications, p. 155, Gavin H (2013).
[4] See Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, American Psychiatric Publishing, 2013.
[5] See "Pedophilia" Annual Review of Clinical Psychology, Seto MC (2009), pages 391-407.

to search the defendant's house for additional child sex abuse images. Investigator Walsh did so knowing that he had "other evidence" identifying Guay as a pedophile (information from Massachusettes and Georgia law enforcement officers regarding Guay's online enticement of minors), and knowing that Guay had received numerous images of child sex abuse images over at least a three day period in November 2016 with children in Massachusettes, and possibly now with children in the state of Georgia. Based on the nature of Guay's conduct, Investigator Walsh established probable cause such that Judge Palumbo could be confident that a search of the defendant's residence would reveal additional images of child sex abuse images—and it did. As such, this Court should reject the Magistrate Judge's recommendation that the warrant was stale and therefore lacked probable cause. Further, with the rejection of this recommendation, we ask this Court to reject the recommendation that statements of the defendant be suppressed as fruit of the poisonous tree. If this Court agrees that probable cause existed, then the execution of the search warrant was lawful and the interview of the defendant that stemmed from the execution of the warrant is not from the fruit of the poisonous tree.

D. **Investigator Walsh Did Not Provide False Factual Information in his Affidavit and the Record Does Not Support the Finding that the Investigator Knowingly Omitted Relevant Caselaw from the Second Circuit Court of Appeals**

This Court should reject the Magistrate Judge's R&R because Investigator Walsh did not provide false factual information in his affidavit. At worst, Investigator Walsh—who is not a lawyer—was negligent when he raised the issue of staleness to Judge Palumbo by citing caselaw that omitted recent, and contrary, Second Circuit decisions. This omission, while disconcerting, does not rise to the level of knowingly misleading the issuing magistrate let alone willful and deliberate midconduct on the part of Investigator Walsh such that the

9

evidence obtained from the search should be cast aside at great social cost—that is, the protection of children from sexual predators.

The Fourth Amendment does not expressly preclude use of evidence obtained in violation of its commands; that rule has been judicially created. The Supreme Court has reminded courts that suppression is "our last resort, not our first impulse" in dealing with violations of the Fourth Amendment. Hudson v. Michigan, 547 U.S. 586, 591 (2006). The animating principle of the exclusionary rule is deterrence of police misconduct, but the extent to which the rule is so justified "varies with the culpability of the law enforcement conduct." Id. at 701 (suggesting that deterrent value of exclusionary rule is most effective in cases of "'flagrant or deliberate violation of rights'" (quoting Henry J. Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965), and citing Brown v. Illinois, 422 U.S. 590, 610--611, (1975) (Powell, J., concurring in part))). Thus, in United States v. Leon, the Supreme Court recognized an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922.

"When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Herring v. United States, 555 U.S. 135, 142 (2009) (citing Leon, 468 U.S. 897, 922). A police officer relying in "good faith" on a warrant should not bear the consequences of a magistrate's error in issuing that warrant unless: (1) the officer misled the magistrate in his affidavit; (2) the magistrate "wholly abandoned his judicial role"

10

such that "no reasonably well trained officer should rely on the warrant;" or (3) the warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). The Supreme Court has since clarified that these limitations apply not merely in cases of deliberate police misconduct, but also in situations where an officer is "reckless" or "grossly negligent" in seeking or executing a warrant. Herring, 555 U.S. at 144. The burden rests on the government to prove that police reliance on a warrant was objectively reasonable. United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011). A determination that a warrant "was so lacking in indicia of proable casue as to render official belief in its existence unreasonable" is "a very difficult threshold to meet." United States v. Falso, 544 F.3d 110, 128 n.24 (2d Cir. 2008). It most often applies "when affidavits are bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations." Clark, 638 F.3d at 103; United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985) (the good faith exception is inapplicable only if the warrant application is "*devoid* of factual support" (emphasis in original)). By contrast, where "'thoughtful and competent judges' might disagree as to whether the facts alleged established probable cause," the good faith exception should apply to prevent suppression. Clark, 638 F.3dat 104 (quoting Leon, 468 U.S. at 926).

Here, while the Magistrate Judge faulted the warrant application on two accounts: 1) its failure to mention a self-serving, excupatory statement made by the defendant to investigators in Georgia, and 2) its failure to include relevant Second Circuit case law, it only cited one factual omission, which was not an omission at all. The Magistrate Judge erronously

11

believed that Investigator Walsh had knowledge of the defendant's email reponse to Georgia investigators in which the defendant stated that he "deleted everythign social media wise" and "anything that has happened is over with." Dkt. #31-1, p. 36. But the Magistrate Judge did not understand that at the time Investigator Walsh stood before Judge Palumbo, he had no knowledge of the email between Georgia investigators and the defendant. Investigators shared the email with HSI in April 2018 during an independent HSI investigation into the defendant that New York State Police were completely unaware of. New York State Police and HSI did not know of each other's independent investigations into the defendant until June 4, 2018. The simultaneous but separate investigations, which can be confusing, is precicely why the government filed a supplemental reply to the defense motion laying out the timeline of events so the Magistrate Judge could see that Investigator Walsh did not have knowledge of what was happening in HSI's parallel investigation. Dkt. #33.

With regard of the omission of Second Circuit caselaw, to be sure, the warrant affidavit was entirely frank and forthright in terms of the potential issue of staleness, specifically drawing attention to the issue. The exclusionary rule is designed to deter deliberate, reckless, or otherwise inexcusable violations. See Davis, 564 U.S. at 238. Because the officer's affidavit was thorough and accurate in terms of the facts upon which the officer relied, it falls short of deliberate deception or gross negligence and this Court should find that the good faith exception applies and precludes suppression of the evidence obtained pursuant to the warrant.

Here, the Magistrate Judge acknowledged that the affiant presented the staleness concern but also found that the "most damning evidence of misleading" was that he "knowingly failed to advise" the issuing magistrate of the contrary decisions but without any basis for having deemed such failure a "knowing" one. There is simply no record evidence of the conclusion that the investigator knowingly, let alone intentionally, determined not to cite the contrary decisions of the Second Circuit. If any of the parties to the warrant process should have been most cognizant of the contrary Second Circuit case law it was the issuing magistrate, a trained lawyer and sitting judge, and even he apparently lacked the knowledge of such cases. To hold the investigator to the highest degree of responsibility for errors or significant omissions as to the pertinent facts is appropriate, but the negligent failure to cite specific case law is not the type of error to which the exclusionary rule should be applied. Put another way, where the investigator provided all relevant facts in a truthful manner, to fault the law enforcement officer for his failure to cite to law as to which the issuing magistrate was also apparently unable to locate is not the type of error at which the exclusionary rule is aimed. "Because the remedy exacts a heavy toll on the justice system, however, the exclusionary rule does not apply whenever suppressing evidence 'might provide marginal deterrence.'" Raymondo, 780 F.3d at 105 (quoting Herring, 555 U.S. at 141).

Keeping in mind that the officer provided the relevant facts and put the issue of staleness up front, his reliance on state law and older law from other federal courts, the Magistrate Judge's recommendation to exlude it is not a reasonable use of the rule. Once the warrant issued, having put the issue on the table, the investigator reasonable relied on the judicial determination that the search was justified by probable cause. Police officers

13

conducting themselves reasonably "cannot be expected to question the magistrate's probable cause determination." Leon, 468 U.S. at 921. Further, the government is not aware of any prior decisions in this Circuit or any other which have held that a warrant application is misleading due to errors made in legal citation. Here, where there were no inaccuracies or false statements or significant omissions as to the facts, reliance on the issuance of the warrant, having provided all relevant facts to the issuing magistrate, reliance on the warrant that issued was objectively reasonable.

Since the investigator's conduct here does not evince deliberate and culpable conduct, the exclusionary rule should not apply. It bears repeating that to trigger the exclusionary rule, "[P]olice conduct myst be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144. Here where the investigator acted with "an objectively reasonable good-faith belief that [his] conduct [was] lawful," and it involved, at worse, "simple, isolated negligence," exclusion simply "cannot pay its way." Davis, 131 S.Ct. at 2427–28 (internal quotation marks omitted).

### III.    CONCLUSION

**WHEREFORE**, for the foregoing reasons, the government respectfully submits that the Court reject the Magistrate's Report and Recommendation.

DATED: Buffalo, New York, April 16, 2020.

>                JAMES P. KENNEDY, JR.
>                United States Attorney
>
> BY:     s/ MEGHAN A. TOKASH
>                Assistant United States Attorney
>                United States Attorney's Office
>                Western District of New York
>                138 Delaware Avenue
>                Buffalo, New York   14202
>                716/843-5860
>                Meghan.Tokash@usdoj.gov