UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              v.

SHANE GUAY,

              Defendant.
_____

**19-CR-103-JLS**

**MEMORANDUM IN RESPONSE TO
GOVERNMENT'S OBJECTIONS**

## INTRODUCTION

The Honorable H. Kenneth Schroeder Jr. correctly found that an incredible 570-day delay between alleged conduct over the course of three days in November 2016 and the application for a search warrant on May 31, 2018 rendered the warrant stale and invalid.

Judge Schroeder, who himself has undoubtedly issued hundreds, if not thousands, of federal search warrants in his tenure on the bench, was also demonstrably correct in concluding that Town Justice Palumbo was knowingly misled by New York State Investigator Daniel Walsh, the warrant's applicant. Contrary to the picture painted in the government's objections, Judge Schroeder recognized that Inv. Walsh did more than innocently cite some irrelevant case law on the topic of staleness. "[F]rank and forthright," the government calls Inv. Walsh's affidavit on the topic of staleness. (Gov. Obj., at 12; Docket No. 39). That couldn't be farther from the truth. Whether deliberately or recklessly, Inv. Walsh carefully selected only cases that supported his position, and went so far as to claim – boldly and falsely – that "that the temporal proximity of child pornography evidence is immaterial to search warrant affidavits." (Application, at p. 26; Docket No. 31-2, Ex. B). This statement, ostensibly supported by Inv. Walsh's carefully curated case citations, is in fact the opposite of frank and forthright. It is

deceptive and disingenuous.  It is mendacious and misleading. It is false. And it is on that basis that Judge Schroeder correctly found that the good-faith exception cannot save this warrant. (Report and Recommendation (R&R), at 23; Docket No. 38.).

It is respectfully submitted that this Court should adopt the thorough and well-reasoned Report and Recommendation issued by Judge Schroeder and find that suppression of the evidence – both direct and indirect, both the physical evidence and statement evidence – found as result of the May 31, 2018 search warrant be suppressed.

## FACTS

On May 31, 2018, Olean Town Justice Daniel Palumbo issued a search warrant for Shane Guay and the premises at 147 North 8th Street, Olean New York in Cattaraugus County after an application by Daniel Walsh, a New York State police officer. This search warrant was based on alleged conduct from only three days – November 6, 7, and 8 – in 2016.

In other words, the search warrant was issued based on conduct that occurred a full year and a half after the alleged conduct occurred.

In the portion of the search warrant application entitled "Allegations of Fact to Support Reasonable Cause," the application alleges that "between November 7 and November 8, 2016" someone with the Instagram username "helloimbored100" messaged an Instagram user (name redacted in the version of the application provided to the defense), who is identified in the application as a juvenile. (*See* Application at pp. 6 to 15, Docket No. 31-1, Ex. B). The helloimbored100 user asked for nude pics and sent an image of a nude adult male and an image of an adult female with her legs spread apart.

The application also alleges that the redacted Instagram user received a handful of messages on November 6 and 7, 2016 asking for nude pictures. (Application, at 4(b)).  The application, however, does not specify who sent those requests.

Later in the application, Inv. Walsh also alleges that on November 8, 2016, helloimbored100, presenting to be a 12-year-old girl, sent images of either underage girls or a penis at 13:53, 13:58, and 13:59 UTC.  It is alleged that helloimbored100 also sent an image of vagina at 20:36 UTC, but that the age of the female cannot be determined.  It is alleged that the context of the conversation suggests that it is supposed to that of the 12-year-old helloimbored100.

Also on November 8, 2017, at 16:54 UTC, helloimbored100 sent an image of a penis to a redacted Instagram user.  At 17:40, helloimbored100 asks for "sexy" pictures of this Instagram user.  At 22:42 helloimbored100 again asked for a nude picture.  Helloimbored100 also sent a picture of his upper body, which Inv. Walsh suggests matches a description of Shane Guay.

The remainder of this section of the application – the section meant to establish probable cause – goes on to demonstrate the alleged link between helloimbored100 and Shane Guay. There are no more facts provided as to either helloimbored100's activity or Shane Guay's activity over the course of the next 570 days between this isolated conduct in the fall of 2016 and the time at which the search warrant application is presented to Justice Palumbo at the very end of May 2018.

Accordingly, the information in the warrant was extremely stale and probable cause did not exist in May of 2018 to search Shane Guay or the premises at 147 North 8th Street.

**ARGUMENT**

**A.     The government futilely raises new arguments that do nothing to advance its position. They should be rejected on that basis and because crediting them now would impair the legitimacy of the proceedings below.**

The government correctly notes that the standard of review on these objections is *de novo.* It fails, however, to note that the "district judge will ordinarily refuse to consider *de novo,* arguments, case law and/or evidentiary material which could have been but were not presented to the magistrate judge in the first instance." (R&R, at 24, citing *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988)).

A simple comparison of the government's response to Mr. Guay's suppression motion (Docket Nos. 32, 33) and its objections here (Docket No. 39) demonstrate the government is raising new arguments for the first time before this Court.

Indeed, the government now claims that Inv. Walsh was unaware of email correspondence between the user of an account allegedly operated by Mr. Guay and a Harris County investigator. No such argument was presented below.

The government also now claims that because there were limited factual omissions or misrepresentations, the warrant should be upheld despite the obvious manner in which Justice Palumbo was misled with respect to binding law.

The government, perhaps now recognizing that the Second Circuit's decision in *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) dooms its argument, futilely tries different tactics to distinguish *Raymonda* – arguing that the device at issue here is a phone, not a computer. No such argument was presented below.

The government also tries to distinguish *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, at *3 (W.D.N.Y. May 16, 2011) and *United States v. Ohlson*, No. 11-CR-225-A,

2012 WL 913037, at *4 (W.D.N.Y. Mar. 16, 2012). In it papers below, the government

contended simply that "[t]he time lapses in *Coon*, *Ohlson* and *Raymonda* may be persuasive for

the defense, but they by no means are binding on any future child exploitation cases in the

Western District of New York, and those cases are owed a good faith analysis before throwing

the baby out with the bathwater." (Gov. Resp., at 15; Docket No. 32.)

   To be sure, these new arguments fall flat on the merits. Addressing the last first, Judge

Schroeder correctly relied on *Raymonda* and *Coon* and *Ohlson* for their persuasive holdings as

applied to this case. Judge Schroder's Report and Recommendation stands on its own and needs

no further elaboration here.

   Next, with respect to the new claim that Inv. Walsh was unaware of the email, there are

several reasons this does not change the suppression calculus:

   (1) Despite carrying the burden to demonstrate good faith applies, there is no evidence

before this Court that Inv. Walsh was unaware of the email. There are no notes or documents to

substantiate this new, exceedingly convenient claim that Inv. Walsh was only aware of the

inculpatory evidence and none of the exculpatory evidence.

   (2) Inv. Walsh *should have* been aware of the exculpatory evidence before he sought a

warrant to rifle through a man's home.

   (3) Judge Schroeder quotes from the government's own response in concluding that

Walsh should have conveyed the information to Justice Palumbo. (R&R, at 22.)

   (4) This Court should be skeptical of the claim that there was absolutely no cooperation

between HSI and NYSP before June 4, 2018. Again, it is exceedingly convenient that it just so

happened that HSI was made aware of a NYSP investigation the *very day before* the two jointly

conducted a search of Mr. Guay's residence. Indeed, there can be no mistake that HSI and NYSP

conducted the search jointly. HSI's own report of the search makes that clear: "On June 5, 2018,
Special Agent Kathryn Gamble, Homeland Security Investigations (HSI) Buffalo assisted
members of the NYSP execute the search warrant at the SUBJECT PREMISES." (Report of
Investigation, attached hereto as Ex. E.[1]; capitalization in the original).

(5) The email exchange was clearly secondary in Judge Schroeder's decision to not apply
the good faith doctrine. There can be no doubt about this: Judge Schroeder called the
misrepresentation about staleness "[t]he most damning evidence." (R&R, at 20.)

Finally, the government's perfunctory complaint that the defense and Judge Schroeder
have cited no caselaw that Justice Palumbo can be misled on the state of law is wholly
inconsequential for one self-evident reason: The government itself has come forth with no
caselaw that such a ruling *cannot* be made. The government attempts to downplay the nature of
the misleading information. Walsh's misrepresentations were only "errors in legal citation," the
government claims (Gov. Resp., at 14) as if he forgot that the Bluebook favors italics over
underscore. Not so. The omission of binding case law and the bold and false statement that
staleness is "immaterial" go to the very heart of the search warrant application. Far from mere
"legal citation," Judge Schroeder found these false representations to be critical, and found that
they led Justice Palumbo to issue a defective warrant.

Thus, there are two valid reasons to reject these new arguments. First, to protect the
legitimacy of the proceedings before the magistrate court, and second, because are they not
persuasive.

---

[1]     Exhibits A-D are attached to Mr. Guay's motion to dismiss and incorporated herein by
reference. (Docket No. 31-2). Exhibit E is attached to this memorandum.

**B.**     **Judge Schroeder was correct to find that the search warrant lacked probable cause because the information was 570 days old, well past its expiration date.**

Probable cause to search a place exists if the issuing judge finds a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir.1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

A search warrant is invalid if it is based on information that appears to be stale. The Second Circuit has explained that:

> [T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

The facts must be sufficiently close in time to the issuance of the warrant and the search so that probable cause can be said to exist at the time of the search – not as of sometime in the past. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (holding that six week delay between drug purchase and search warrant affidavit was stale). The *Wagner* court went on to explain that "facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.*, at 75.

The information presented to Justice Palumbo was clearly stale and not of a sufficiently recent vintage to allow for a finding of probable cause.  Continued downloading or evidence of exchange of child pornography was not explored.  There was no evidence of chatting with others on this topic or entering other child pornography sites or other indicia of continued criminal

activity. *See United States v. Greathouse*, 297 F.Supp.2d 1264 (D. Ore. 2003) (finding that a tip that the suspect's computer one year earlier contained child pornography was stale, and thus did not provide probable cause for search warrant for seizure of computer, despite investigating officer's affidavit stating child pornography collectors routinely maintained their materials for long periods of time, where the officer did not specify the basis for his statement, and there was no evidence that defendant was a pedophile or that he engaged in any ongoing criminal activity.).

In *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, at *3 (W.D.N.Y. May 16, 2011), one year had passed between the discovery of child pornography and the issuance of search warrant. Judge Arcara found that the information to be stale. The Court also easily disposed of the government's contention that all those accused of a child pornography crime can be considered "hoarders," thus eliminating stateless. The Court wrote that there was "no evidence suggesting that this defendant collected or hoarded child pornography. He did not subscribe to any illicit internet publications or e-groups. He did not have a pre-paid membership. There was no evidence indicating that he had 'collected' or downloaded many illicit images." *Id.*

The same is true in this case. The account holder helloimbored100 sent inappropriate images and requested inappropriate images over the course of 2 or 3 days. Shane Guay did not subscribe to any illicit internet publications or e-groups. Shane Guay did not have a pre-paid membership to any child pornography website. There was no evidence indicating that Shane Guay had 'collected' or downloaded many illicit images. Had any of this evidence existed, it would have been easy enough for the police to acquire it and present it to the justice. They had 18 months to track down other information that would demonstrate probable cause. The police located the IP address of the user, they had a cell phone number and text and call records; they had an email address, they had a physical address; they had access to Mr. Guay's Facebook

8

account and the accounts of alleged victims, yet, tellingly, they were not able to produce any
information that the user had engaged in any illicit behavior since November of 2016.

In fact, just a month before the warrant was issued, on April 17, 2018, an investigator
with the Harris County Georgia Sherriff's office emailed Shane Guay and informed him that he
is conducting an investigation into Shane. The user of the email address believed to be Shane
Guay immediately responded: "I have deleted everything social media wise.  Anything that has
happened is over with.  I was going through rough times and was saying things that were stupid.
It was a massive mistake and I regret it." (Email, Docket No. 31-2, Ex. C.)  Inv. Walsh did not
inform Justice Palumbo about this exchange.  Not only is there no evidence Mr. Guay was a
hoarder, there was evidence to the contrary – that the evidence had been deleted. Yet this crucial
information was not conveyed to Justice Palumbo.

Judge Arcara found the passage of one year resulted in unconstitutional stateless.  A full
year and a half passed in this case.  This information rotted on the vine.

In *United States v. Ohlson*, No. 11-CR-225-A, 2012 WL 913037, at *4 (W.D.N.Y. Mar.
16, 2012), Judge Arcara again found information in the warrant to be stale when 13 months
passed between the conduct and the search-warrant issuance.  Much like this case, Judge Arcara
noted that "the warrant affidavit in this case showed that a person accessed an indeterminate
number of images of child pornography during one, relatively short, five-day period of March
15, 2010 through March 19, 2010, without a showing that a person intentionally retained any
images of child pornography." *Id.*

In *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), Judge Skretny *and the
Second Circuit Court of Appeals* found information contained in a warrant application to be stale

where nine months passed between the discovery of an image of child pornography and the
issuance of the warrant.

As Judge Schroeder found: The May 31, 2018 sworn Application of Investigator Walsh
**fails to establish that:**

    1.  the defendant was an admitted pedophile;

    2.  the defendant "paid for access to child pornography;

    3. the defendant "purchased a website subscription dedicated to
child pornography;

    4. the defendant "had an extensive history of possessing or receiving
pornographic images;"

    5. the defendant "received numerous images of child pornography
over an "extended period of time or as part of "continuous activity;"

    6. the defendant was "an intentional 'collector' of child
pornography" and "likely to hoard" images of child pornography "or
acquire new ones – long after any automatic traces of" the images
and texts of November 6, 7 and 8, 2018.

(R&R, at 12-13.)

"In total," Judge Schroeder rightly concluded, "the Application for the search warrant
dated May 31, 2018 failed to establish 'propensity-raising circumstances' that the defendant was
an intentional collector of child pornography or involved in child pornography on a "continuous"
basis." (*Id.*, at 13.)

Because the alleged conduct occurred over a period of only a few hours 18 months before
the warrant was issued, the information contained in the warrant was necessarily stale, and the
warrant therefore lacked probable cause.

**C.      Judge Schroeder was correct to conclude that the doctrine of good faith cannot save the legally deficient warrant.**

The burden is on the government to demonstrate the objective reasonableness of the officers good faith reliance when the warrant is invalid. *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citing *United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999) and *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)).

For an officer to be able to claim the benefits of the good faith exception, his reliance on a warrant must be objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922 (1984). "Thus, the good faith exception cannot shield [ ] an officer who relies on a duly issued warrant in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Raymonda*, 780 F.3d at 118 (quoting *Clark*, 638 F.3d at 100).

**1.    Judge Schroeder was correct in finding that Town Justice Palumbo was knowingly misled.**

"When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs" of suppression. *Davis v. United States*, 564 U.S. 229, 238 (internal quotation marks omitted).

Here, Inv. Walsh recognized the extreme staleness of the information and thus included a section of law meant to persuade Justice Palumbo that the application was not stale. Inv. Walsh cited at least seven cases from random and various jurisdictions where judges have found information was not stale. Critically, Inv. Walsh omitted all of the many cases – including

11

precedential caselaw from the Second Circuit – finding that the passage of as little as 9 months rendered information stale.  Inv. Walsh did not inform Justice Palumbo about *Raymonda*, for instance, where the Second Circuit concluded that a 9-month passage of time resulted in stale information.  He did not inform Justice Palumbo of *Coon* or *Ohlson* – cases from this very district dealing with child pornography where information much fresher than the 18-month old information at issue here was deemed to be stale.  By presenting only one side and by deliberately omitting binding caselaw to the contrary, Inv. Walsh left the intended impression that staleness is simply not an issue when it comes to cases dealing with child pornography.  In fact, Inv. Walsh unabashedly and explicitly made this very claim in his application: "In spite of the fact that there is no hard and fast rule, the federal courts are in seemingly solid agreement," Inv. Walsh falsely told Justice Palumbo, "**that the temporal proximity of child pornography evidence is immaterial to search warrant affidavits**." (Application, at p. 26; emphasis added). Justice Palumbo was misled.

In fact, it stands to reason that Inv. Walsh omitted this information and intentionally applied for the warrant before a Town Justice instead of a Magistrate Judge from this Court, who would have inevitably been keenly aware of *Raymonda* and the cases from this District predating *Raymonda*.  Indeed, Homeland Security Investigation, an arm of the Department of Homeland Security and a federal agency that routinely applies for warrants before federal magistrate judges, was already involved in this case at the time the warrant was sought before Justice Palumbo. Indeed, HSI received a referral to investigate this case in April of 2018.  HSI Special Agent Nicholas Melchiorre had already inspected a phone of a potential victim and issued an summons to Instagram, LLC.  The agency was intimately involved in investigating the case.  But they did not apply for a warrant before a federal judge.

Instead, immediately after New York State Police secured this warrant based on a false and misleading representation of the law, HSI went to New York State Police headquarters "to take custody of 26 pieces of evidence seized from the residence of Shane GUAY."  (HSI report of investigation, Docket No. 31-2, Ex. D).  Instead of proceeding with a search-warrant application in this district before a federal judge who certainly would be aware of *Raymonda*, they went to an Olean Town Justice and provided federal caselaw from other jurisdictions inconsistent with *Raymonda*.  Then, almost immediately after the search warrant signed and executed, federal agents resumed prosecuting and investigation this case on the federal level.  This fact must be weighed when deciding whether the police acted in good faith.  Indeed, it is submitted that federal district courts should be particularly cognizant of the potential for error in town courts because of the potential for lack of training and expertise among town judges.  *See, e.g.,* In Tiny Courts of N.Y., Abuses of Law and Power, Glaberson, W., New York Times, September 25, 2006, https://www.nytimes.com/2006/09/25/nyregion/25courts.html (site last visited, December 24, 2019).  This is especially true where the Town justice is presented with caselaw that is superficially compelling, but actually in conflict with precedent.

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble."  *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.), on reh'g, 91 F.3d 331 (2d Cir. 1996).  With *Coon*, *Ohlson*, and *Raymonda*, the police have exhausted their three wishes with the good-faith genie.  Especially after *Raymonda*, a precedential case from the Second Circuit, Inv. Walsh should have been aware that if 9-month old information is stale in the child-pornography context, then certainly 18-month old information is too.  At the very least, it was reckless to tell Justice Palumbo that "temporal proximity" is simply "immaterial."  And this is coupled with the fact that Inv. Walsh omitted the fact that they had no information suggesting Mr. Guay was a

hoarder. This is especially true where the alleged offending conduct is similar to the conduct at issue in *Raymonda*, in that it is discrete (limited to mere minutes of activity over the course of two, maybe three days), remote, and there is no evidence that the alleged offender exhibited any of the characteristics of hoarding.

What is more, the Second Circuit applied the "good faith" doctrine in *Raymonda* at least in part because the "relevant legal deficiency 'was not previously established in precedent,' and so "the agent's failure to recognize that deficiency cannot vitiate good faith."  780 F.3d at 119 (quoting *Clark*, 638 F.3d at 105).  That's no longer true after the *Raymonda* opinion was issued. Because Second Circuit decisions do establish precedent, police officers and agents can no longer claim that this legal deficiency has not been established.  *See United States v. Buck*, 813 F.2d 588, 593, n. 2  (2d Cir. 1987); *see also Clark*, 638 F.3d at 105 ("Of course, once the requirement is established, police may not thereafter claim reasonable reliance on warrants secured in the absence of compliance.").  Yet, not only did Walsh disregard *Raymonda's* holding by presenting 18-month old, stale information to Justice Palumbo, he also knew his application was stale and so included non-binding case law inconsistent with *Raymonda* while affirmatively omitting any reference to this seminal case, all in an ultimately successful effort to mislead the magistrate.

As Judge Schroeder found: "The most damning evidence of misleading is the fact that Investigator Walsh knowingly failed to advise Judge Palumbo of the contrary decisions of the Second Circuit Court of Appeals on the issue of "staleness" and the two decisions of the Hon. Richard J. Arcara, all of which were a matter of record prior to May 31, 2018 and easily retrievable on Westlaw." (R&R, at 20.).

In resorting to caselaw and legal principle in his attempt to persuade Justice Palumbo that his 18 month-old warrant was not stale, Walsh undertook a responsibility to represent the state of the law truthfully – or at the very least, not recklessly. He undertook a responsibility to not misled the Town Justice on this score. But, as Judge Schroeder found, Walsh omitted the most important cases in making that determination, and included only those that he believed helped him. In fact, he went even further than that; he falsely asserted under oath "that the temporal proximity of child pornography evidence is immaterial to search warrant affidavits."


**CONCLUSION**

This Court should adopt Judge Schroeder's thorough and well-reasoned Report and Recommendation.


**DATED:**  May 14, 2020, Buffalo, New York.

Respectfully submitted,

**/s/Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341; 551-3346 (fax)
jeffrey_bagley@fd.org
*Attorney for Defendant Shane Guay*


**TO:**   Meghan A. Tokash
Assistant United States Attorney

15