UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

SHANE GUAY,                                               19-cr-103-JLS-HKS

        Defendant.
_____

### DECISION AND ORDER

    Defendant Shane Guay moves to suppress physical evidence and alleged oral statements recovered during a search of his home. Dkt. 31. He argues for suppression because the application for a search warrant relied upon stale evidence and otherwise misled the issuing judge.

    The Magistrate Judge recommended that this Court grant Guay's motion to suppress.[1] Dkt. 38. But this Court is not persuaded. The sworn application for a search warrant sets forth circumstances of Guay's willfulness and deliberateness in his repeatedly seeking and sending child pornography, from which the Court can infer, for purposes of this Decision and Order, that he is a "collector" likely to hoard such material. The November 2016 information described in the application for a search warrant was not stale; the search warrant was supported by probable cause. Accordingly, Guay's motion to suppress is denied.

---

[1] On May 16, 2019, United States Magistrate Judge H. Kenneth Schroeder, Jr., was designated to hear and determine, and report and recommend on, all pre-trial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Dkt. 10. This case, originally assigned to United States District Judge Lawrence J. Vilardo, was reassigned to the undersigned on January 3, 2020. Dkt. 27.

## BACKGROUND

I. Investigations and Application for a Search Warrant

Between 2016 and 2018, members of the New York State Police and the Shirley and Ayer, Massachusetts Police Departments investigated the transmission of online messages of a pornographic nature sent to multiple minors on November 6, 7, and 8, 2016. Dkt. 31-1 at 8-10.

As a result of the investigations, Investigator Daniel Walsh of the New York State Police submitted an application for a search warrant to an Olean City Court Judge, stating that he and others had traced the messages to Defendant, Shane Guay. Dkt. 31-1. The application was sworn to by Investigator Walsh on May 31, 2018, and the warrant issued the same day. *Id.* at 29.

According to the application, Guay used two Instagram usernames[2] to message female minors. *See, e.g.*, Dkt. 31-1 at 9. The minors "were all 11 or 12 years old at the time" they received the messages. *Id.* The messages identified in the search warrant application were "concentrated on sexual conversations and obtaining images and/or video of clothed and unclothed girls and female genitalia." *Id.* at 11. According to the application, there were at least 179 "login events" to the

---

[2] It appears that the user believed to be Guay had one Instagram account and, at some point, changed the "User name/Vanity name." *See* Dkt. 31-1 at 10 (stating that the Instagram usernames "heythereitsme56" and "helloimbored100" shared the same "Instagram User ID number"); *see also id.* at 16 (stating that the Instagram User ID number "displayed/used Instagram User name 'heythereitsme56' and then Instagram User name 'helloimbored100'"). The search warrant application describes Guay's communications to female minors from both usernames. *See, e.g., id.* at 9-14.

2

usernames between November 5, 2016, at 23:08:51 UTC and November 8, 2016, at 22:57:36 UTC. *See id.* at 10; *see also id.* at 16 (describing that the account was "repeatedly accessed" by a user with the telephone number believed to belong to Guay).

The application for the search warrant stated that the Instagram user believed to be Guay sent sexually explicit images to several minors. *See* Dkt. 31-1 at 9 (sending two explicit images to a minor and asking her, "Can I do this to you?"); *id.* at 11-12 (sending three explicit images of a female minor); *id.* at 16 (sending an explicit image and representing that it was of a 12-year-old female). In addition, the application alleged that he requested sexual images and actions from the minors. *See id.* at 9 (requesting images and referencing "trad[ing] naked pic[tures]"); *id.* (asking whether the minor would "like" oral sex); *id.* at 12 (requesting images); *id.* (directing the minor to masturbate and to take a twenty second pornographic video with her phone in the kitchen of her home). One minor, who was addressed "directly by her first name," received multiple messages requesting explicit photographs of herself. *Id.* at 9. She was told she would be "[left] . . . alone if [she] sen[t] a pic[ture]." *Id.* (telling the minor that sending a picture is "easy" and asking her to "answer [him]").

On one occasion, the user believed to be Guay identified himself to a minor as 12 years old; on at least two others, he stated he was 13 years old. Dkt. 31-1 at 12. One minor identified herself as ten years old. *See id.* ("On 11/08/16 . . . . in response to the question 'So do you like this?' [sent] from [one of Guay's alleged usernames],

3

[the minor] responded and said[,] 'no! im only 10!!!!'"); *see also id.* at 11 (describing that one minor "sent a direct message . . . that said 'Stop'").

The search warrant application also identified messages where the minors were told their exchanges could remain a "secret" between them. Dkt. 31-1 at 9 ("Do it in private . . . . We can keep it a secret."); *id.* at 12 ("It can be our secret. I'll do anything you want.").

In addition, the application stated that, on at least two occasions, the user believed to be Guay sent images of male genitalia to female minors. Dkt. 31-1 at 9-13. Investigators believed the photographs were of him at his residence. *Compare* Dkt. 31-1 at 9-13 (describing the background of an explicit image), *with id.* at 13-14 (describing the background of an alleged photograph of Guay taken at his residence). The user believed to be Guay also sent photographs of his face and torso to minors. *See id.* at 12 (identifying images of "the [t]orso and [f]ace of the person believed to be [Guay]" that were sent to minors).

On April 17, 2018, an investigator with the Harris County, Georgia Sheriff's Office emailed Guay about communications from yet a third Instagram username. The email's subject line stated: "Instagram video and inappropriate conversations with a 12 year old." Dkt. 31-1 at 36. The investigator stated he sought to "clear[] up" a "case [he was] working" and "be clear" that any "conversation with [the] victim is over." *Id.* Within two minutes, Guay responded: "I have deleted everything social media wise. Anything that has happened is over with. I was going through rough times and was saying things that were stupid. It was a

4

massive mistake and I regret it." *Id.* This email communication was not included in the application for a search warrant.

## II. The Issuance and Execution of the Search Warrant

An Olean City Court Judge issued the search warrant on May 31, 2018. Dkt. 31-1 at 29. The warrant authorized a search of Guay's residence and the seizure of cell phones, computers, electronic devices, and records. *Id.* at 5-7. The search warrant was executed on June 5, 2018. *Id.* at 37. Authorities seized 26 items of evidence, including various computers, cellular phones, and other electronic devices. *Id.*

Guay seeks to suppress the "oral evidence obtained from him" as a result of the search warrant. Dkt. 31 at 3. He does not, however, specify the statements that he allegedly made to police. According to the government, "[d]uring the search warrant execution, [authorities] conducted a non-custodial interview with [Guay] at the NYSP barracks in Olean, [New York]." Dkt. 32 at 3. During this time, the government alleges that Guay admitted to "knowingly sending pictures of his penis to minor females that identified themselves as being between the ages of eleven and thirteen years of age," "soliciting nude images of the female minors," and "receiv[ing] nude images of minor females . . . (between the ages of 14 and 16) via Instagram in the November/December 2017 timeframe." *Id.*

The government also alleges that Guay admitted to having inappropriate conversations with female minors using three Instagram usernames (two of which were those identified in the application for a search warrant). Dkt. 32 at 3. In

5

addition, Guay allegedly stated that he last exchanged explicit images with minor females "in the December 2017/January 2018 timeframe." *Id.*; *see also id.* (alleging that Guay's statements included: "Obviously I did it, but I don't recall."; "I'll admit it. I just don't personally remember it, but I did it. I'll say I did it, but I don't remember sitting there doing it."). Guay also allegedly described how he located and selected minors to message on Instagram. *Id.* at 4.

### III. Indictment, Motion to Suppress, and R&R

Guay was charged in a multi-count indictment[3] and, as relevant here, moves to suppress the physical evidence and alleged oral statements. Dkt. 31. He argues that the warrant was based upon stale information that does not, therefore, establish probable cause. *Id.* at 3-13. In addition, Guay argues that the government cannot rely on the good faith doctrine established in *United States v. Leon*, 468 U.S. 897 (1984), because the investigator knowingly misled the Olean City Court Judge in seeking the search warrant and because it was unreasonable to rely on a warrant that was based on "extremely stale" information. *Id.* at 9-12. Since the warrant was invalid, Guay argues, the search violated his Fourth Amendment rights. He requests suppression of the physical evidence and his alleged statements as "fruit of the poisonous tree." *Id.* at 3-13.

---

[3] The indictment charges Guay with production of child pornography (Counts 1, 4), enticement of a minor (Counts 2, 5), receipt of child pornography (Counts 3, 6, 7, 8), possession of child pornography (Counts 9, 10, 11, 12), and also includes a forfeiture allegation. *See* Dkt. 8.

The government filed an initial response (Dkt. 32), as well as a supplemental response that provides a timeline of the investigation (Dkt. 33). The supplemental response also sets forth other facts related to "evidence found on the defendant's cell phone to indicate the defendant continued to collect child pornography *after* November 2016." Dkt. 33 at 3 (emphasis in original).

Judge Schroeder's Report and Recommendation recommends granting Guay's motion to suppress. Dkt. 38. Specifically, the R&R concluded that "the sending of texts and images of a pornographic nature to multiple juvenile students on three separate days, *i.e.*, November 6, 7 and 8, 2016, by the defendant were isolated instances and were insufficient to establish probable cause on May 31, 2018, . . . because that information was 'stale' as a matter of law." *Id.* at 12; *see also id.* at 13 (search warrant did not establish "propensity-raising circumstances" that Guay was "an intentional collector of child pornography or involved in child pornography on a 'continuous' basis") (citations omitted).

In addition, the R&R determined that the good faith doctrine was inapplicable because the issuing judge was "knowingly [misled]." Dkt. 38 at 17-23. Judge Schroeder reasoned that the investigator relied upon non-binding Eighth and Ninth Circuit cases in the application for a search warrant instead of relevant decisions from within the Second Circuit. *Id.* at 20. Judge Schroeder also determined that Guay's email—in which he stated he "deleted everything social media wise" and that "[a]nything that has happened is over with"—should have been included in the application. *Id.* at 22. He deemed the email "relevant to the

question of whether the defendant had any evidence of child pornography on his devices on May 31, 2018 and whether he could validly be described as a 'collector' or 'hoarder' of child pornography." *Id.*

Based on these conclusions, Judge Schroeder recommended that Guay's motion to "suppress the evidence seized from his residence on June 5, 2018 be granted and further that the use of any statements made by him to law enforcement agents during the execution of the search warrant and in response to police interrogation at the NYSP barracks in Olean, New York on June 5, 2018 be suppressed." Dkt. 38 at 23.

The government objects to the R&R, arguing that the search warrant was based upon non-stale evidence that Guay is "likely a hoarder" and therefore supported by probable cause. *See* Dkt. 39 at 5; *see also id.* at 7 (arguing that the record shows Guay has "the propensity to hoard child sexual abuse images"). The government also distinguishes cases that the R&R determined were relevant (and fatal) to a finding of probable case. *See id.* at 6-7 (distinguishing *Raymonda* and *Coon*). In addition, the government argues that the investigator, in his application for a search warrant, neither provided false factual information nor knowingly omitted relevant case law. *Id.* at 9-14.

Guay responded (Dkt. 43) and the government replied (Dkt. 44). This Court heard oral argument on May 28, 2020, at which time the motion was taken under advisement.

8

## STANDARD OF REVIEW

District courts may accept, reject, or modify the findings or recommendations of a Magistrate Judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). District courts must review *de novo* the "portions of the report or specified proposed findings or recommendations" to which a party objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). In addition, when reviewing an issuing judge's probable cause determination based on an affidavit in support of a search warrant, courts "generally accord[] 'substantial deference to the finding of an issuing judicial officer that probable cause exists,' limiting [the] inquiry to whether the officer 'had a substantial basis' for his determination." *See United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir.), *cert. denied* 137 S. Ct. 433 (2015) (quoting *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)).

## ANALYSIS

Judge Schroeder recommended that this Court grant Guay's motion to suppress for two central reasons. First, he concluded that the search warrant lacked probable cause because it was based on stale information and failed to establish that Guay was a "collector" of child pornography or involved in child pornography on a "continuous" basis. Dkt. 38 at 13. Second, he determined that the exclusionary rule must be applied, and that the government could not rely on the "good faith doctrine," because the investigator knowingly misled the Olean City Court Judge in seeking the search warrant. *Id.* at 23.

9

The Court disagrees, and concludes that the application for the search warrant relied upon non-stale information that established both a propensity for hoarding child pornography as well as probable cause. Guay's communications with multiple female minors were deliberate and repetitive, not random and isolated. In addition, the Court concludes that law enforcement did not mislead the issuing judge. Accordingly, the Court rejects the R&R and denies Guay's motion to suppress.

## I. The warrant was supported by probable cause.

The search warrant, issued in May 2018, was not based upon stale evidence.

A warrant may lack probable cause where the facts supporting criminal activity have "grown stale" by the time the warrant issues. *See Raymonda*, 780 F.3d at 114. Staleness may arise where the evidence supporting the warrant "is not 'sufficiently close in time to the issuance of the warrant' that 'probable cause can be said to exist *as of the time of the search*.'" *Id.* (citing *Wagner*, 989 F.2d at 75). "The law recognizes no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case." *Raymonda*, 780 F.3d at 114 (internal citation and quotation marks omitted).

The Second Circuit has identified two "critical factors" in determining staleness: "the age of the facts alleged and the 'nature of the conduct alleged to have violated the law.'" *Id.* (citing *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998)). Also relevant is "whether the [warrant application's] supporting affidavit depicts continuing conduct or isolated and random instances of illegal conduct." *See*

10

*United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006).  Moreover, "[w]here the affidavit 'establishes a pattern of continuing criminal activity,' such that 'there is reason to believe that the cited activity was probably not a one-time occurrence,' the passage of time between the last alleged event and the warrant application is less significant."  *Raymonda*, 780 F.3d at 114 (citing *Wagner*, 989 F.2d at 75).

The Second Circuit has also recognized that the staleness determination in child pornography cases is "unique" because "persons interested in those materials" are likely to hoard such images for long periods of time.  *See Irving*, 452 F.3d at 125 (citations and quotations omitted); *accord Raymonda*, 780 F.3d at 114 ("Because 'it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes,' evidence that such persons possessed child pornography in the past supports a reasonable inference that they retain those images—or have obtained new ones—in the present.") (citing *Irving*, 452 F.3d at 125) (citations and quotations omitted).  Before inferring that a defendant is a "hoarder" for purposes of a staleness determination, however, courts must first find that there is "probable cause to believe that [a defendant] *is* . . . a collector" of child pornography.  *Raymonda*, 780 F.3d at 114 (citing *United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005)).

Courts can "infer[] that the suspect was a collector of child pornography" where there are "circumstances suggesting that he had accessed [such] images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection."  *Raymonda*, 780 F.3d at 115.  For example, courts can infer that a

11

defendant is a collector where there is "an extended history of receiving pornographic images." *Id.* at 114. So too can the inference be made where there is a "single incident of possession or receipt" coupled with either a "willful intention to view the [child pornography]" or "redistribut[ion]" of it to others. *Id.* at 115. Such circumstances "tend to negate the possibility that a suspect's brush with child pornography was a purely negligent or inadvertent encounter, the residue of which was long ago expunged." *Id.*

Indeed, circumstances showing willfulness "suggest that the suspect accessed those images because he was specifically interested in child pornography, and thus—as is common among persons interested in child pornography—likely hoarded the images he found." *Raymonda*, 780 F.3d at 115. In contrast, "[w]here the only evidence supporting a search warrant is equally consistent with a suspect's innocent stumble on an illicit website as with his deliberate access to child pornography, such evidence does not support an inference that the suspect is a 'collector' likely to hoard pornographic images . . . ." *Id.* at 121.

Here, Guay is an alleged collector of child pornography who likely was hoarding such images. The search warrant application sets forth circumstances indicating that Guay deliberately sent and solicited pornographic material with minor females. It traced two separate Instagram usernames to Guay, who used both to send multiple messages to female minors. According to the application, Guay sent images of his genitalia to minors, as well as images of female genitalia. He solicited explicit photographs from the minors, and encouraged them to keep

their exchanges "a secret." At times, he gave direction about the types of images he hoped to receive—for example, he asked one minor to send him a twenty second pornographic video from the kitchen of her home. He repeatedly attempted to engage and converse with the minors. He addressed one female minor by her first name. He lied about his age. He knew he was corresponding with minors; one female minor identified herself as ten years old. He was asked to "stop." He told one minor he would leave her alone—after she sent a photograph to him. Guay, in total, allegedly accessed the Instagram usernames at least 179 times between November 5 and November 8, 2016.

These facts do not suggest "isolated and random instances of illegal conduct." *Irving,* 452 F.3d at 125. Nor are his alleged actions "consistent with an innocent user inadvertently stumbling upon a child pornography website . . . and promptly closing the window." *See Raymonda*, 780 F.3d at 117. Rather, the record reflects a person who acted "willfully and deliberately, actively seeking . . . out [images] to satisfy a preexisting predilection." *Id.* at 115.

The staleness discussion in *United States v. Keith*, 183 F. Supp. 3d 427 (S.D.N.Y. 2016), is relevant here. There, the court denied a motion to suppress on staleness grounds where a search warrant application, based on nine-month-old evidence, set forth facts establishing "*both* 'an extended history of possessing or receiving pornographic images' and 'circumstances suggest[ing] that [the suspect] had accessed those images willfully and deliberately.'" *Id.* at 433 (citing *Raymonda*, 780 F.3d at 114-15). As to the first prong, the court found that the suspect had

13

logged onto a child pornography website for 22 hours over the course of several weeks, accessed at least three posts, and viewed dozens of images and one video of child pornography. *Id.* And as to the second prong regarding willfulness, the court considered that the website could only be accessed by registered users who downloaded certain software and obtained the web address from another user. *Id.* On these bases, the court inferred that the defendant was likely to hoard images of child pornography and denied the motion to suppress. *Id.*

Here, too, the search warrant application set forth facts establishing a history of receiving or possessing child pornography. Guay repeatedly accessed the Instagram account discussed in the application for a search warrant; the application traced at least 179 "login events" over a few days. His multiple messages to minors soliciting child pornography, as well as his own sending of pornographic images—that he already possessed—constitute a "pattern of continuing criminal activity" rather than a "one-time occurrence." *Raymonda*, 780 F.3d at 114 (quoting *Wagner*, 989 F.2d at 75).

So too did the application set forth circumstances suggesting that Guay "accessed [child pornography] willfully and deliberately." *Id.* at 115. As explained above, as alleged, Guay both requested child pornography from minors and distributed child pornography to minors. He communicated directly and repeatedly with the minors that he sought to exploit—even after one minor told him she was only ten years old and after another minor told him to stop. Thus, on the record before it, the Court concludes that the application sufficiently portrays a collector

14

who is "specifically interested in child pornography, and . . . likely hoarded the images he found." *Id*.

Because Guay's alleged persistence and deliberateness in seeking and sending child pornography render him a "collector" likely to hoard such material, the "passage of time" between the November 2016 information and the May 2018 search warrant becomes "less significant" to a staleness determination. *See Raymonda*, 780 F.3d at 114; *see also Irving*, 452 F.3d at 125 (22-month-old information in a search warrant application was not stale where "the affidavit furnished sufficient evidence for the magistrate judge to determine, at least preliminarily, that as a pedophile [defendant] would be likely to hoard pornographic images of children in his home for extended periods of time"). On this record, the Court concludes that the warrant was based upon non-stale information and established probable cause that child pornography would be found in Guay's residence or on his electronic devices. Accordingly, Guay's motion to suppress is denied.[4]

---

[4] This holding applies to Guay's alleged statements as well as the physical evidence seized from his home. The Court assumes, for this purpose, that the alleged statements were a direct result of the search. *See* Dkt. 38 at 16-17; *see also Raymonda*, 780 F.3d at 120, n. 9.

### II. The issuing judge was not misled.

Because the Court concludes that the search warrant was based upon non-stale information that established probable cause, the Court rejects the R&R and denies Guay's motion to suppress.

While the analysis can end here, the Court nonetheless briefly considers the government's remaining objection: that Judge Schroeder erred in concluding that Investigator Walsh knowingly misled the Olean City Court Judge in seeking the application for a search warrant.

Judge Schroeder identified two instances of bad faith: that the investigator failed to make the city court judge aware of both (1) "binding" case law and (2) Guay's email stating that he "deleted everything social media wise." The Court disagrees.

#### a. Relevant Case Law

The application for a search warrant "acknowledge[d] that the temporal proximity of [the] application and the evidence supporting probable cause may arouse the issue of staleness." Dkt. 31-1 at 25. Discussion on staleness spanned four pages. Nonetheless, Judge Schroeder concluded that authorities "knowingly 'misle[d]'" the issuing judge. Dkt. 38 at 19. He determined that the "most damning evidence of misleading" was that the investigator "knowingly failed to advise [the issuing judge] of the contrary decisions of the Second Circuit Court of Appeals on

16

the issue of 'staleness' and the two decisions of the Hon. Richard J. Arcara." *Id.* at 20. The cases cited by Judge Schroeder are distinguishable.[5]

### 1. *United States v. Raymonda*

*United States v. Raymonda*, 780 F.3d 105 (2d Cir.), *cert. denied* 137 S. Ct. 433 (2015), supports the Court's conclusion that the search warrant was based on non-stale information.

The affidavit at issue in *Raymonda* alleged that an IP user believed to be the defendant had "at some point accessed thumbnails of child pornography" on "a single afternoon." *Id.* at 117. It did not allege that the defendant had "click[ed] on any thumbnail links to access the full-sized files." *Id.* at 116. On that record, the Second Circuit concluded that the affidavit failed to describe "circumstances sufficiently deliberate or willful to suggest that [the defendant] was an intentional 'collector' of child pornography, likely to hoard those images—or acquire new ones—long after any automatic traces of that initial incident had cleared." *Id.* at 117. Thus, no probable cause existed.

Guay's actions, as alleged, are more purposeful than those of the *Raymonda* defendant. The sworn search warrant application identifies Guay's repetitive and sometimes personalized messages to multiple female minors. It is alleged that

---

[5] The R&R concluded that *Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991), and *United States v. Ohlson*, No. 11-CR-225-A, 2012 WL 913037 (W.D.N.Y. Mar. 16, 2012), should have been included in the search warrant application. Neither case is significantly analyzed in the R&R or the government's objections. Nonetheless, the Court has studied *Rivera* and *Ohlson*. Neither requires a conclusion, here, that the application for a search warrant relied upon stale information.

17

Guay, using two different usernames, sent explicit images of himself, as well as child pornography that he already possessed, to multiple minors. He further directed them to send him pornographic images or videos of themselves. *See also* Dkt. 39 at 6-7 (distinguishing *Raymonda*). *Raymonda* therefore supports the Court's conclusion that the sworn application sufficiently portrays Guay as a purposeful and proactive collector of child pornography.

### 2. *United States v. Coon*

No probable cause existed in *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165 (W.D.N.Y. May 16, 2011), a child pornography case relied upon in the R&R. In *Coon*, agents requesting a search warrant were aware of:

> (1) only one image containing child pornography that (2) had been downloaded almost a full year before the search warrant was issued and (3) no other circumstances to confirm the likelihood that the computer or child pornography would still be at the residence nor (4) evidence from which to infer hoarding of child pornography.

*Id.* at *4. Although it was a "very close case," the court concluded that under those circumstances, "the evidence was insufficient to infer that [he] collected or hoarded child pornography." *Id.*

This case, however, is "primarily a cell phone/mobile application case, not a computer case." Dkt. 39 at 6. And unlike the *Coon* defendant, who downloaded a single image of child pornography, the search warrant application alleges that Guay

18

sent child pornography directly to, as well as attempted to solicit such images from, multiple female minors. *Coon* is therefore distinguishable.[6]

### b. Alleged Omission of Facts

In his R&R, Judge Schroeder concluded that the April 17, 2018 email exchange should have been presented to the issuing judge. Dkt. 38 at 21-22.

The investigator who emailed Guay provided few specifics about the "case [he] [was] working." Dkt. 31-1 at 36. The subject line read: "Instagram video and inappropriate conversations with a 12 year old." *Id.* The investigator told Guay that he "tracked down [his] email, name and other information via [his] IP address." *Id.* He stated: "At this point in time [I] am not looking to take charges[;] I want to be clear this conversation with my victim is over. . . ." *Id.*

Judge Schroeder concluded that Guay's response—that "[a]nything that has happened is over with" and that he "deleted everything social media wise"—is "important . . . to the issue of 'staleness.'" Dkt. 38 at 22. Specifically, he stated:

> This responsive statement of the defendant would certainly be relevant to the question of whether the defendant had any evidence of child pornography on his devices on May 31, 2018 and whether he could validly be described as a "collector" or "hoarder" of child pornography . . . . [I]t is

---

[6] The R&R relies on *Coon*'s conclusion that: "[T]he ability to recover deleted computer files does not, *without more*, support probable cause to search a residence. There also must be probable cause to believe that the computer will be located at the residence at the time of the search . . . . [A]s more time passes between the initial download and the search of the residence, the more attenuated probable cause becomes." Dkt. 38 at 12 (citing *Coon*, 2011 WL 1871165 at *3) (emphasis added). The search warrant application, however, sufficiently portrays Guay as a collector and likely hoarder of child pornography, therefore establishing probable cause that such images would be found in his residence and on his electronics.

19

>information that should have been made known . . . to [the Olean City Court Judge].

Dkt. 38 at 22.

Guay's statements have limited value to the communications described in the application for a search warrant. The email is focused on an "Instagram video and inappropriate conversations" from a third username, different from the two identified in the application for a search warrant. In addition, the email is limited to his communications with a 12-year-old—but Guay communicated with multiple female minors, including one minor who identified herself as ten years old. Moreover, as explained, Guay can validly be described as a collector likely to hoard child pornography, either by retaining accessed images or obtaining new images. *See Raymonda*, 780 F.3d at 114. Thus, this email communication has no bearing on the conduct described in the application for a search warrant—which was sufficient to establish probable cause.

## CONCLUSION

For the foregoing reasons, the Court rejects the Report and Recommendation. Defendant Shane Guay's motion to suppress (Dkt. 31) is denied.

SO ORDERED.

Dated:   June 3, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

20