UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.

SHANE GUAY,

           Defendant.
_____

                                              **19-CR-103-JLS-HKS**

                                              **SENTENCING MEMORANDUM**

## INTRODUCTION

Two questions lie at the heart of every sentencing. Why did the defendant commit the crime, and will he do it again. This memorandum attempts to answer both of those questions. I believe that the "why" is explained, to the extent that it can be, by the turmoil and depression Shane Guay was experiencing at the time of his offense.

There are, however, three reasons, outlined below, why it is extremely unlikely that Shane will commit another such crime.

I believe Shane's sentence should account for the "why," and it should account for the reasons that Shane will not reoffend after he is released. Studies have shown and courts have found that the returns – that is, the sentencing goals – may not only be diminishing, but that in fact extended sentences of incarceration may serve to defeat many of the sentencing goals, including rehabilitation. *See, e.g.*, *United States v. Rivera*, 281 F. Supp. 3d 269 (E.D.N.Y. 2017) ("[L]onger prison sentences were associated with a three percent *increase* in recidivism.") (emphasis added) (quoting Valerie Wright, Ph. D., *Deterrence in Criminal Justice*, The Sentencing Project, Nov. 2010, at 6).

I ask this Court to take this, and what follows, into consideration at Shane's sentencing.

## BACKGROUND

This Court knows that while it must correctly calculate the guidelines range in each case, it may not treat that range as mandatory. *Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009). Rather, this range is "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. *Gall,* 552 U.S. at 49-50, 53-60. The Court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101.

Increases to the Guidelines in this area of the law over the last 15 years were not based on empirical research; instead they were based solely on the flawed reasoning that deterrence rises in direct proportion to prison time.  That is just not true, as even Congress is coming to realize. *See, e.g.*, Fair Sentencing Act of 2010; First Step Act of 2018.  Indeed, in a comprehensive 2009 review of several studies, researchers concluded that "compared to non-custodial sanctions, incarceration has a null or mildly criminogenic impact on future criminal involvement. We caution that this assessment is not sufficiently firm to guide policy, *with the exception that it calls into question wild claims that imprisonment has strong specific deterrent effects.*"[1]

---

[1] Nagin, Daniel S., Francis T. Cullen and Cheryl Lero Johnson, "Imprisonment and Reoffending," Crime and Justice: A Review of Research, vol. 38, ed. Michael Tonry, Chicago: University of Chicago Press, 2009: 115-200. (Emphasis added).

## SHANE'S SENTENCING

*"Not the same person he was during his darkest moments"*

Shane's offense conduct was precipitated by a particularly traumatic time in his life. His father, with whom he was very close, suffered a debilitating stroke and eventually passed away. Shane felt his life spinning out of control, and as he said, he "didn't care anymore." He contemplated suicide and began exploring child pornography to give himself the gumption to kill himself.

Shane's conduct during this short time was a drastic departure from the life he had led to that point – and the life he has led and will continue to lead from that point onward. Indeed, Shane's devices contained only 154 images and 5 videos of child pornography. Compared to the thousands of images often discovered on the devices of those who have a lifelong and lasting disorder of attraction to minors, and considering the ease with which hundreds of images can be downloaded in a fraction of a second with the click of a mouse, this low amount further supports the fact that Shane was sucked into this unseemly world for only a brief period of time.

\*\*\*

Will he do it again? There are three significant factors demonstrating that he will not.

First, Shane is extremely remorseful and shameful, and he deeply regrets his conduct in this case. He realizes the wrongfulness of what he did and what he said. He realizes that there are no excuses for his actions and would take back his actions if he could. (PSR ¶ 57). Shame and remorse have been the most prominent features of his life for the last two years.

Second, Shane will be under a microscope for the remainder of his life. He is nearly certain to be caught if he engages in this behavior again. As the National Institute of Justice has

found, "The certainty of being caught is a vastly more powerful deterrent than the punishment." National Institute of Justice, Five Things About Deterrence (Sept. 2014).[2]

Third, "the single best predictor of successful release from prison is whether the former inmate has a family relationship to which he can return. Studies have shown that prisoners who maintain family ties during imprisonment are less likely to violate parole or commit future crimes after their release than prisoners without such ties." Solangel Maldonado, Recidivism and Parental Engagement, 40 Family L. Q. 191 (2006).[3]

The many letters submitted by friends and family speak best to this factor. (*See* Exs. A-H). His fiancé, Angel, has been extraordinarily supportive through the last few years. This is true despite the fact that she is suffering from cancer and undergoing both chemotherapy and radiation. It speaks to Shane's character, too, that this support has been a two-way street. Shane has always accompanied Angel to her many medical appointments, and cooks and cleans and generally cares for her on a daily basis.

The many other letters also attest to this. Diane Guay, Shane's mother, says that Shane would "stop everything he was doing" to care for his elderly grandparents who suffered from dementia. Shane also cared for his own mother during this time. She had a surgery which left her unable to do basic chores around the house. But there was Shane, helping as always. Diane also correctly notes that Shane will receive no BOP credit for all the time he was on home incarceration, confined to his house and asking permission to attend Angel's medical appointments. She might have said it best: he is a "reliable and loving man," and he is not "the same person he was during his darkest moments."

---

[2] *Available at* https://nij.gov/five-things/pages/deterrence.aspx

[3] *Available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1789898

Shane's rehabilitation has already begun. Without hesitation, and despite being under no obligation to do so, Shane readily agreed to a $5,000 restitution payment to one of the victims in this case. This is a significant sum for someone like Shane, who will likely labor in low paying jobs for the remainder of his life. Further, he has demonstrated in the nearly two years of pretrial release that he is more than capable of abiding by the court's orders, living a meaningful and productive life, and staying out of any trouble.

Shane has the capacity to thrive. He already has, and he will continue to do so. As this Court knows, part of every sentencing is recognizing that the defendant is more than the crime he committed. *See, e.g., United States v. Singh*, 877 F.3d 107, 122 (2d Cir. 2017) ("While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of 'the diverse frailties of humankind.'") (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion)). The dedication and commitment to his family Shane demonstrated in the last two years make it abundantly clear that Shane is much more than his worst act.

### Not greater than Necessary

The government will surely stress the need for Shane's sentence to reflect the seriousness of the offense, to provide punishment, and to protect the public. Those are laudable sentencing goals. At a bare minimum, however, Shane will be sentenced to five (5) years in prison.

At the end of the day, Shane is a relatively young man and he will have a life post-incarceration. It is thus in everyone's best interest – the public, Shane's, and the victims' – to focus not on incapacitation but on rehabilitation.

Finally, as many courts have recognized, collateral consequences of conviction, such as registration as a sex offender and psychological effects of imprisonment, are relevant to

sentencing. *See, e.g., Autery*, 555 F.3d at 875-76 (acknowledging that defendant's probationary sentence also included his registration as a sex offender, travel restrictions, internet restrictions, therapy requirements, computer restrictions, and other negative consequences); *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling its prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender). When Shane is released from prison he will be a registrable sex offender for life, with dozens of restrictions on his liberty, including his liberty to choose where he lives, with whom he associates, and where he works. These restrictions are properly considered in contemplating the § 3553(a) factors.

Indeed, Shane will be sentenced to a minimum of five (5) years' incarceration. He will be on supervised release for at least five more years, and up to life. He will register as a sex offender under the Sex Offender Registration and Notification Act. If Probation's recommendations are accepted, he will participate in a sex-offense specific treatment program and a mental health treatment program; he will be subject to randomized polygraph testing; any internet device he may own must be monitored by U.S. Probation; if anything "suspicious" occurs on those devices, he must consent to and cooperate with "unannounced examinations" of any electronic device, including the search of "all data"; he will have to turn over any "personal and/or business financial information" to U.S. Probation; he will not be allowed to have any contact with anyone under 18 years old; if he has children, he will be able to pick them up from school only if Probation allows him to.

Recognizing that Shane's liberty will be significantly restrained for at least the next 10 years, a longer sentence of incarceration imposed for many of the § 3553(a) factors – including punishment, incapacitation, deterrence and protection of the public – becomes unnecessary.

## CONCLUSION

Shane will have mental health and sex-offender treatment both inside of prison and after his release. He has family support and has demonstrated that he has the ability to prosper.

**Attached to this Memorandum are the following letters submitted for the Court's consideration:**

**Exhibit A**:   Letter written by Angel Lycett

**Exhibit B:**   Letter written by Deborah Myers

**Exhibit C:**   Letter written by Diane Guay

**Exhibit D:**   Letter written by Mark A. Lata

**Exhibit E:**   Letter written by Paul Kenyon

**Exhibit F:**    Letter written by Timothy Allen Lycett

**Exhibit G:**   Letter written by Tina Kozlowski

**Exhibit H:**   Letter written by William Lata

**Exhibit I:**   Letter written by Shane Michael Guay.

**DATED**:         Buffalo, New York, April 30, 2021.

      Respectfully submitted,

      **/s/ Jeffrey T. Bagley**
      Jeffrey T. Bagley
      Assistant Federal Public Defender
      Federal Public Defender's Office
      300 Pearl Street, Suite 200
      Buffalo, New York 14202
      (716) 551-3341, (716) 551-3346 (Fax)
      jeffrey_bagley@fd.org
      Attorney for *Shane Guay*